**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 95-50117

UNITED STATES OF AMERICA,

Defendant-Appellant,

versus

FRANK GRANDLUND,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

December 13, 1995

Before POLITZ, Chief Judge, HILL[*] and DeMOSS, Circuit Judges.

POLITZ, Chief Judge:

Frank Grandlund appeals the revocation of his supervised release, asserting a violation of his right to confront adverse witnesses. For the reasons assigned we affirm. Exercising our supervisory powers, we direct implementation of certain practices and procedures to assure the reliability of evidence of laboratory reports in all future revocation actions.

<u>Background</u>

Grandlund was sentenced to three months in prison and three years of supervised release for a failure to appear, 18 U.S.C. § 3146(a)(1). The supervised release began on

---

[*] Circuit Judge of the Eleventh Circuit, sitting by designation.

May 11, 1992.

On December 1, 1993 the sentencing court granted a petition of the probation office to modify the conditions of the supervised release to require Grandlund's participation in substance abuse programs and mandatory urine testing. The following month, upon petition, the court ordered a second modification, requiring Grandlund to live in a halfway house for 120 days and enter a drug treatment program, after which he was to be placed in an aftercare program.

In January 1995 the probation office petitioned for revocation of the supervised release for violating the conditions of release, including use of illegal drugs, excessive use of alcohol, and frequenting places where illegal drugs were used or distributed.

At the revocation hearing the sole witness was Grandlund's probation officer, Katherine Harrison, who testified about the laboratory analyses of urine samples taken from Grandlund on November 4, 1993; December 21, 1993; December 30, 1994; January 3, 1995; January 6, 1995; January 13, 1995; and January 26, 1995. Harrison testified that the first two were taken by another probation officer and the remainder were taken by personnel of the aftercare program. She further testified that each sample was given a number and sent for analysis to PharmChem Laboratories in California. Over Grandlund's objection she testified about the contents of the laboratory reports, but the reports were not filed in evidence. She also testified that when she confronted Grandlund with the test results of the first two samples, he admitted consumption of so much alcohol at a party that it was possible that he also had used cocaine there. As a result, she stated that she placed Grandlund in several drug treatment programs, as ordered by the court.

Grandlund pleaded "not true" to the allegation of violations of the conditions of his supervised release and, as noted, objected to Harrison's testimony about the urinalysis tests

as hearsay under Fed.R.Crim.P. 32.1 and as inconsistent with his rights of confrontation and cross-examination. Grandlund's counsel cross-examined Harrison but offered no evidence and subpoenaed no witnesses.

The district court overruled Grandlund's objections, doing so without assigning any reasons and without making an explicit finding of good cause to deny Grandlund's right to cross-examine adverse witnesses. At the time of its ruling, the trial court did not have the benefit of our recent holding re-emphasizing the need for such.[1]

At the close of the hearing the court revoked the supervised release and sentenced Grandlund under 18 U.S.C. § 3585 to prison for ten months. Grandlund timely appealed, contending that the trial court erred by allowing the probation officer to testify about the urinalysis test results which, he contends, violated his right of confrontation of the PharmChem employee(s) who conducted the tests.

## Analysis

The decision to revoke supervised release is reviewed under an abuse of discretion standard,[2] but the constitutional challenge about the right of confrontation of adverse witnesses is reviewed *de novo*.[3]

Revocation hearings are not part of the criminal prosecution, are not formal trials, and

---

[1]**United States v. McCormick**, 54 F.3d 214 (5th Cir.), cert. denied, _____ U.S. _____, 116 S.Ct. 264 (1995).

[2]**United States v. Turner**, 741 F.2d 696 (5th Cir. 1984). Supervised release may be revoked upon a finding, by a preponderance of the evidence, that a defendant violated a condition of his supervised release. 18 U.S.C. § 3583(e)(3); **United States v. McCormick**. Evidence which would establish guilt beyond reasonable doubt is unnecessary. **United States v. Francischine**, 512 F.2d 827 (5th Cir.), cert. denied, 423 U.S. 931, 96 S.Ct. 284 (1975).

[3]**United States v. McCormick**.

the rules of evidence are not applied mandatorily.[4]  Because a person's liberty is at stake, however, due process requires that a defendant be given a fair and meaningful opportunity to refute and challenge adverse evidence to assure that the court's relevant findings are based on verified facts.[5]

The defendant's rights in a revocation hearing include a qualified right to confront and cross-examine adverse witnesses.  The confrontation of a particular witness may be disallowed upon a finding of good cause.[6]  In its determination whether good cause exists, courts must employ a balancing test which weighs the defendant's interest in the confrontation of a particular witness against the government's interest in the matter.  A critical consideration is the indicia of reliability of the challenged evidence.[7]

Grandlund maintains that the trial court committed reversible error by failing to make a specific finding of good cause to abrogate his right of confrontation.  That failure may require reversal in most instances,[8] but may be found to be harmless error where good cause

---

[4]**Morrissey v. Brewer**, 408 U.S. 471, 92 S.Ct. 2593 (1972); **United States v. Courtney**, 979 F.2d 45 (5th Cir. 1992); Advisory Committee Notes to Fed.R.Crim.P. 32.1(a)(2); see also Fed.R.Evid. 1101(d)(3) (federal rules of evidence inapplicable to proceedings granting or revoking probation).

[5]**Morrissey v. Brewer** (parole hearings); **Gagnon v. Scarpelli**, 411 U.S. 778, 93 S.Ct. 1756 (1973) (probation).  The same due process rights granted to those facing revocation of parole are required for those facing revocation of supervised release.  **United States v. McCormick**.

[6]**Morrissey v. Brewer**.  There must be an explicit, specific finding of good cause, and the reasons should be made a part of the record of the revocation hearing.  **Baker v. Wainwright**, 527 F.2d 372 (5th Cir. 1976).

[7]**United States v. Kindred**, 918 F.2d 485 (5th Cir. 1990); see also **United States v. Bell**, 785 F.2d 640 (8th Cir. 1986); **United States v. Penn**, 721 F.2d 762 (11th Cir. 1983).

[8]See **United States v. McCormick**, citing **United States v. O'Meara**, 33 F.3d 20 (8th Cir. 1994) (per curiam).

exists, its basis is found in the record, and its finding is implicit in the court's rulings.[9] In the case at bar good cause exists, its basis is readily found in the record, and its existence is implicit in the court's relevant rulings.

In **United States v. Kindred** we held that the right of confrontation was not violated by the receipt of a urinalysis report through a probation officer's testimony. In **Kindred** the government's interest in minimizing the difficulty and expense of procuring witnesses outweighed the defendant's interest, deemed minimal because he neither contested the allegations of drug use nor the accuracy of the drug test. We there recognized that urinalysis reports are routine matters for a company engaged in conducting such tests and generally are considered reliable.

In **United States v. McCormick** we concluded that the right to confront a laboratory technician was not infringed by the introduction of a lab report showing that the defendant's urine specimen tested positive for amphetamine and methamphetamine. The record contained numerous indicia that the urinalysis was reliable, including the recognized reliability of the urinalysis report as a regular business record, the testimony of a probation officer that he took the sample and sent it to the laboratory, and an affidavit from a manager of the laboratory attesting to laboratory procedures, the analysis of the particular specimen, and the virtual impossibility that the positive test result could have been caused by another substance.

We also concluded in **McCormick** that the government's interest in avoiding the difficulty and expense of a personal appearance in a federal court in Texas of the California lab technician(s) who analyzed the specimen outweighed the defendant's marginal interest

---

[9]**United States v. McCormick**, citing **United States v. Alaniz-Alaniz**, 38 F.3d 788 (5th Cir. 1994), cert. denied, _____ U.S. _____, 115 S.Ct. 1412 (1995); **United States v. Bell**.

in confrontation. Although McCormick contended that legal medications he was taking had caused a false positive result, he neither requested retesting nor presented any evidence that his medications could have caused a false positive. Nor did he seek a subpoena for any PharmChem employee or offer evidence impugning the reliability of the laboratory or its testing procedures. Further, because of the high volume of specimens analyzed at PharmChem it is not likely that any lab personnel would be able to remember information about the specimen(s) independent of the lab report. As to PharmChem we characterized it as "a substantial laboratory of national prominence, which performs a significant volume of urinalyses for the government and relies substantially on such work for its economic viability [and] values its reputation for accuracy and expertise in the field."[10]

In the case at bar Grandlund's interest is tenuous and marginal. He offered no exculpatory explanation for the seven positive test results over a period of 15 months. He did not seek retesting, requested no subpoena of PharmChem employees, offered no evidence of weakness in the lab's practices or procedures, when confronted by the probation officer he did not deny ingesting cocaine, and offered no suggestion of the questions he would like to ask the lab personnel, or how that cross-examination could be of relevance and value to him. Under the circumstances of this case, we must conclude that a confrontation with laboratory personnel would have been of little use to Grandlund.

By contrast, the government's interests are substantial. Avoiding the delay, difficulty, and expense of securing the appearance of distant witnesses has been recognized as adequate good cause.[11] We must note, however, that the indicia of reliability of the evidence in the case at bar is, in some respects, less than that in **McCormick**. The lab report was not offered

---

[10]**United States v. McCormick**, 54 F.3d at 225.

[11]**Gagon v. Scarpelli**.

6

nor was an affidavit from a PharmChem lab specialist attesting to the general reliability of the lab's testing procedures and the results of the tests at issue.

On the other hand, in the case at bar we have not one urine sample, as in **McCormick**, but seven samples taken over a period of 15 months. Further, Grandlund did not object to or challenge the testimony of his probation officer that when she confronted him with the cocaine positive results of the first two tests he did not deny ingesting cocaine and sought to use intoxication as the reason. Nor did he object when she testified that as a result of these two tests the court modified the terms of his supervised release to require his participation in a residential drug treatment program and its aftercare.

Mindful that we have before us a close case, we nonetheless must conclude, considering all relevant circumstances, that the record adequately supports a finding of good cause for denying Grandlund's right of confrontation herein, and that the finding thereon is implicit in the trial court's rulings.

To avoid reversals and remands, considering the delays and burdens imposed thereby on the defendant, prosecution, and the judicial system, and to assure the reliability of relevant, often essential, evidence, we now invoke our supervisory authority and direct the following procedures for all future revocation hearings involving positive laboratory tests:

1. A copy of the report of each relevant laboratory test is to be provided to the court and the defendant at least five days, computed in accordance with Fed.R.Crim.P. 45, before the date for the revocation hearing unless the trial court specifically directs a different period.

2. At the same time the court and the defendant are to be provided a copy of the report on the chain of custody of each sample, including the date of collection, name of person(s) collecting and labeling same, and a description of the label.

3. At the same time the court and the defendant are to be provided with a copy of an affidavit by a responsible laboratory

7

employee attesting to laboratory procedures, including laboratory chain-of-custody routines, whether all required procedures were followed regarding the subject sample(s), and the result(s) of the testing.

4.  All of the foregoing instruments are to be made a part of the record in each revocation hearing.

These procedures are supplementary to the trial court's responsiblity, under controlling precedents, to determine whether good cause exists to disallow the right of confrontation of a particular witness after weighing the interests of the defendant and government and evaluating the reliability of the evidence involved. When good cause is found, the district court shall make a part of the record its findings and conclusions on the issue of good cause to abrogate defendant's right of confrontation of an adverse witness.

For the foregoing reasons, the judgment of revocation appealed is AFFIRMED, and the supervisory powers directives are ISSUED.