# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 25, 2010

No. 09-10711

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

MELVIN ODELL MINNITT, JR.,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, PRADO, Circuit Judge, and O'CONNOR, District Judge.[*]

REED O'CONNOR, District Judge:

Defendant-Appellant Melvin Odell Minnitt, Jr. appeals the district court's decision to revoke his supervised release based on its finding that he failed to comply with the terms of the supervised release. Minnitt claims that the district court violated his due process right to confrontation by relying on hearsay as evidence that, during the period of his supervised release, he: (1) possessed controlled substances; and (2) failed to attend mandatory drug counseling

---

[*] District Judge of the Northern District of Texas, sitting by designation.

No. 09-10711

sessions.  We conclude that the district court did not err in revoking Minnitt's supervised release, and affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Minnitt was convicted of being a felon in possession of a firearm.  He was sentenced to thirty-three months' imprisonment, followed by three years of supervised release.  Minnitt served the prison term and began his supervised release in May 2008 under the supervision of Probation Officer Greg Cruz ("Officer Cruz").

In June 2009, Officer Cruz filed a Petition for Offender Under Supervision (the "Petition") with the district court.  The Petition alleged that Minnitt violated the terms of his supervised release because he: (1) used and/or possessed illegal controlled substances during the term of his supervised release; and (2) missed required counseling sessions throughout the period of his supervised release. Officer Cruz requested issuance of a violator's warrant, which the district court ordered the following day.

The next week, the Government filed a Motion to Revoke Supervised Release ("Motion to Revoke").  The Motion to Revoke alleged that Minnitt violated three conditions of his supervised release by using and possessing the illegal controlled substances of cocaine and marijuana, and further, that Minnitt violated one condition of his supervised release by failing to attend required counseling sessions with the local drug aftercare provider.  Particularly, the Government alleged that Minnitt submitted a urine specimen on May 20, 2009 that tested positive for cocaine and another on June 1, 2009 that tested positive for marijuana.  The Government also alleged that Minnitt failed to attend at least one required counseling session in each of the months of July, August, September, October, and November 2008 and in January, April, and June 2009.

The district court held a revocation hearing two weeks later.  Officer Cruz was the only witness to testify in person at the hearing.

No. 09-10711

A.    Evidence Related to Controlled Substances

At the hearing, Officer Cruz first addressed the allegation that Minnitt used and possessed illegal controlled substances. Without objection, Officer Cruz testified that Minnitt's May 2009 urine specimen tested positive for cocaine and his June 2009 urine specimen tested positive for marijuana.

Also without objection, Officer Cruz testified about the process used to evaluate urine samples. He stated that the sample is first sent to a laboratory in Arlington, Texas for testing. If the first test is positive, the lab re-runs the same type of test to verify the result. The lab then notifies the probation office of the results. If the results are positive, a probation officer discusses the results with the urine donor, and if the donor denies the indicated drug use, the specimen is sent to a national laboratory, Kroll Laboratory ("Kroll"), for additional testing. Kroll first re-runs the same type of test to confirm the positive result. If it is confirmed, Kroll performs a different, more detailed type of test on the specimen.[1] Kroll then reports the test results back to the probation office.

When the Government asked Officer Cruz whether Kroll tested Minnitt's samples, Minnitt objected, arguing that the testimony would violate his limited due process right to confront and cross-examine witnesses. Minnitt urged that Officer Cruz's answer could only be based on hearsay and that the due process clause afforded Minnitt the opportunity to confront the hearsay declarant, absent the judge's specific finding of good cause to deny the confrontation. The district court found such good cause and overruled Minnitt's objection, but did not state on the record the reasons for its finding.

---

[1] This test is called a gas chromatography/mass spectrometry test ("GC/MS"). Congress has expressly approved of the use of GC/MS urinalysis test results in proceedings to revoke a defendant's supervised release for possession or use of a controlled substance. *See* 18 U.S.C. § 3583(d), (g).

No. 09-10711

The Government then moved to admit the lab results from Minnitt's May 2009 urine specimen and from his June 2009 urine specimen. Minnitt again objected based on his due process right to confrontation. The district court overruled Minnitt's objection and admitted the exhibits. Minnitt obtained a running objection as to testimony on the two exhibits.

Officer Cruz first testified about the May 2009 sample and two possible alternate explanations Minnitt had given for why the sample tested positive for cocaine. Officer Cruz testified that when he confronted Minnitt about the results, Minnitt denied knowingly ingesting cocaine. At that time, Minnitt stated that he had accepted a cigarette from a family member, and he implied that, unbeknownst to him, the cigarette may have been laced with cocaine. On the morning of the revocation hearing, Minnitt offered a second possible explanation to Officer Cruz. Minnitt claimed that the positive result might have occurred because he had taken a medicine containing phenazopyridine hydrochloride, a chemical that may have caused a false-positive result. Officer Cruz contacted Kroll just before the hearing to determine whether phenazopyridine hydrochloride may have caused a false-positive. Over Minnitt's objection, Officer Cruz testified that immediately prior to the hearing, he received documentation from Kroll stating that "phenazopyridine hydrochloride would not result in a positive urine sample." On cross-examination, Minnitt presented Officer Cruz with information printed from the Internet stating that phenazopyridine hydrochloride might cause a false result (negative or positive) in certain types of tests. Minnitt did not offer this documentation into evidence.

Officer Cruz next testified that he again confronted Minnitt after the June 2009 sample tested positive for marijuana. Minnitt denied knowingly using marijuana and indicated that another individual had smoked a marijuana blunt in his home, presumably implying that his inhalation of secondhand smoke could have caused a false-positive result. Officer Cruz testified that he obtained

4

documentation from Kroll stating passive inhalation of marijuana could not have caused a false-positive result because the cutoff level used for testing is such that passive smoke inhalation could not have triggered the positive result.

Finally, Officer Cruz testified that Minnitt has a history of abuse of controlled substances, including marijuana and cocaine. He then turned to the allegations of Minnitt's absence from required counseling sessions.

B.    Evidence Related to Missed Counseling Sessions

Without objection, Officer Cruz testified that Minnitt violated a condition of his supervised release because he missed both individual counseling sessions and group counselling sessions that were required parts of his drug treatment program. Officer Cruz then testified more specifically that Minnitt had missed at least one group counseling session for five consecutive months in 2008 and for one month in 2009. Minnitt objected, asserting that the testimony violated his limited due process right to confrontation, and was overruled. Officer Cruz stated that Minnitt failed to attend at least one individual counseling session for five consecutive months in 2008 and for three months in 2009. Officer Cruz did not have first-hand knowledge of these facts; he obtained them from the session counselors. Without objection, Officer Cruz stated that he had confronted Minnitt about some of the missed sessions and that Minnitt never denied that he missed the sessions. Officer Cruz explained that Minnitt had problems securing reliable transportation and that as a result of Minnitt's absences from the sessions, he had modified the terms of Minnitt's supervised release in an attempt to accommodate the transportation problems.

After hearing the evidence, the district court found that Minnitt had committed all of the violations alleged, revoked Minnitt's supervised release, and sentenced him to eighteen months' imprisonment. Minnitt timely appealed, challenging the district court's admission of hearsay testimony as a violation of his limited due process right to confront and cross-examine witnesses.

No. 09-10711

## II. Analysis

"A district court may revoke a defendant's supervised release if it finds by a preponderance of the evidence that a condition of release has been violated." *United States v. McCormick*, 54 F.3d 214, 219 (5th Cir. 1995); *see* 18 U.S.C. § 3583(e)(3). "We review for abuse of discretion a decision to revoke supervised release." *McCormick*, 54 F.3d at 219.

A.    Drug Possession and Use

Minnitt first challenges the district court's admission of various evidence that supports its conclusion that Minnitt used and possessed illegal controlled substances. Particularly, Minnitt challenges the admission of the two urinalysis reports, of hearsay testimony regarding the tests used to produce those reports, and of hearsay testimony regarding Minnitt's absences from counseling. Minnitt alleges that admission of these pieces of evidence violated his limited due process right to confrontation. We review alleged violations of this right *de novo*, but subject to a harmless error analysis. *McCormick*, 54 F.3d at 219. We first address the admission of the urinalysis reports.

1.    Admissibility of Lab Reports

Minnitt argues that the district court erred by admitting the two urinalysis lab reports, as well as testimony about their contents, without first requiring the Government to show good cause to deny Minnitt the opportunity to cross-examine the lab technicians who conducted the tests.

A defendant facing revocation of parole enjoys more limited rights than does a defendant facing a criminal prosecution. *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). While due process provides the defendant in a revocation proceeding the right to confront and cross-examine adverse witnesses, the district judge may deny such right if there is good cause to do so. *Id*. at 489;

6

*United States v. Grandlund*, 71 F.3d 507, 510 (5th Cir. 1995).[2]   To deny confrontation, the district court must specifically find good cause and must make the reasons for its finding part of the record.  *Grandlund*, 71 F.3d at 510 n.6; *McCormick*, 54 F.3d at 220–21.  In evaluating good cause, the district court must weigh the defendant's interest in confrontation of a particular witness against the Government's proffered reasons for pretermitting the confrontation. *Grandlund*, 71 F.3d at 510; *McCormick*, 54 F.3d at 221.

In this case, the district court explicitly found good cause for curtailment of Minnitt's right to confront the technicians, but it did not articulate the basis for its finding.  Failure to articulate the reasons "may be found to be harmless error where good cause exists, its basis is found in the record, and its finding is implicit in the court's rulings." *Grandlund*, 71 F.3d at 510; *see also McCormick*, 54 F.3d at 220 n.7 (explaining how judicial resources are conserved when appropriate findings are articulated on the record, yet finding the error to do so harmless in that case).  Our review of the record has shown that the district court's error was harmless.  We first examine Minnitt's interest in confrontation of the technicians.

a.    Minnitt's Interest

The laboratory results were no doubt important to the district court's finding that Minnitt used and possessed a controlled substance: Minnitt denied using drugs, and the two urinalysis reports are the most reliable evidence to support the Government's allegation. *See McCormick*, 54 F.3d at 222 (on similar facts, discussing a defendant's interest in confrontation).  Additionally, a finding that Minnitt used and/or possessed a controlled substance triggered a mandatory revocation of Minnitt's supervised release.    18 U.S.C. § 3583(g)(1); *see*

---

[2]  "'[T]he same protections granted those facing revocation of parole are required for those facing the revocation of supervised release.'" *McCormick*, 54 F.3d at 221 (quoting *United States v. Copeland*, 20 F.3d 412, 414 (11th Cir. 1994)).

*McCormick*, 54 F.3d at 222 (finding the interest in confrontation magnified where the evidence, if believed, triggers application of a mandatory minimum sentence).

Nonetheless, Minnitt's interest in confronting the laboratory technicians was minimal. As this Court noted in *McCormick*, "a releasee's interest in cross-examining a laboratory technician regarding a scientific fact" is minimal because the truth of the fact can best be "verified through the methods of science" rather than "through the rigor of cross-examination." *McCormick*, 54 F. 3d at 222.[3] Minnitt had ample opportunity to refute the Government's evidence via methods other than cross-examination. For example, he could have requested that his samples be re-tested (*see id.* at 222) or he "could have introduced evidence to support his unsupported conclusionary contention that the presence of [another medication] in his system could cause his specimen to test positive for [a controlled substance]." *Id.* at 223. Minnitt failed to pursue these options.[4] If pursued, these methods would have produced scientifically-verifiable facts that the district court could have compared to the Government's proffered

---

[3] Minnitt asserts that this Court's conclusion in *McCormick* that a defendant has no significant interest in confronting laboratory technicians is undermined by the recent Supreme Court opinion in *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009). However, as Minnitt recognizes, *Melendez-Diaz* interprets a defendant's right to confrontation under the Sixth Amendment in a criminal prosecution, not the limited due process right to confrontation afforded a defendant in a revocation proceeding. *Compare id.* at 2531–32, *with McCormick*, 54 F.3d at 220–21. While standards of the Sixth Amendment may extend to a revocation proceeding, because a revocation proceeding is not a criminal prosecution, the Amendment does not fully apply. *See United States v. Hodges*, 460 F.3d 646, 650 (5th Cir. 2006). *Melendez-Diaz* does not change the analysis used in *McCormick* for applying the limited due process right to confrontation in a revocation proceeding. *McCormick* followed the Supreme Court's opinion in *Morrissey v. Brewer*, 408 U.S. 471 (1972), which is unaffected by *Melendez-Diaz*.

[4] On cross-examination, Minnitt confronted Officer Cruz with information he gleaned from the Internet in an apparent attempt to support one of his false-positive theories. Favorably characterized, this information is mere speculation. It was not shown to be from a reliable source, was not shown to relate to either of the types of tests used on Minnitt's samples, and in any event, was not offered into evidence.

scientifically-verifiable facts. Moreover, if Minnitt truly believed that the technicians may have been able to provide helpful testimony, he could have subpoenaed them himself. *See id.* at 222.

b.    Government's Good Cause

The record reveals good cause to deny confrontation of the lab technicians. First, the reliability of the challenged evidence weighs in the Government's favor. Reliability of the challenged hearsay is a "critical consideration" in a district court's determination of whether good cause exists to disallow confrontation. *Grandlund*, 71 F.3d at 510. Although urinalysis reports are "not so inherently reliable as to be automatically admissible," they are regular business records and therefore bear "substantial indicia of reliability." *McCormick*, 54 F.3d at 223–24; *United States v. Kindred*, 918 F.2d 485, 487 (5th Cir. 1990).

The following evidence supports a finding that the urinalysis reports were reliable: Officer Cruz testified that he collected the sample himself; each sample was tested by two different labs a total of four times using two different types of tests; and Kroll's director of toxicology submitted documentation debunking Minnitt's unsupported false-positive theories.[5] Additionally, Minnitt failed to offer any evidence of weakness in the lab's practices or otherwise in the reliability of the test results. On the whole, the lab results bear a substantial indicia of reliability, which weighs in favor of the Government's good cause to deny confrontation of the technicians. Further, the Government had a substantial interest in avoiding the expense, difficulty, and delay in securing the lab technicians to testify. *Grandlund*, 71 F.3d at 511; *McCormick,* 54 F.3d at 224; *Kindred*, 918 F.2d at 487.

---

[5] Minnitt also challenges the admissibility of this documentation, a matter addressed below.

No. 09-10711

Under the totality of the circumstances, the district court's finding of good cause sufficient to overcome Minnitt's limited right to confrontation of the lab technicians is supported by the record, and therefore, the failure to articulate these reasons on the record constitutes harmless error.

B.    Hearsay Testimony Regarding Testing Procedures

Minnitt additionally challenges the portions of Officer Cruz's testimony where he repeats hearsay statements from the Director of Toxicology for Kroll Laboratory, Pat Pizzo. Prior to the hearing, Officer Cruz questioned Pizzo about the feasibility of Minnitt's proffered false-positive theories. Pizzo explained why the scenarios identified by Minnitt would not have resulted in false-positive results, and Officer Cruz relayed these facts to the district court.

Minnitt had no more substantial an interest in cross-examination of Pizzo than he had in cross-examination of the laboratory technicians. All of this testimony involves scientifically-verifiable facts. Further, if a releasee presents speculative false-positive theories to the district court but offers no supporting evidence, he has no legally-significant interest in confrontation of witnesses adverse to his theories. *See McCormick*, 54 F.3d at 225.

The Government, on the other hand, had at least as substantial an interest in not being required to produce Pizzo at the hearing as it had in not being required to present the lab technicians. As previously noted, Minnitt offered no evidence in support of either of his false-positive theories. Further, Minnitt waited to raise one of his theories until the morning of the revocation hearing. His delay strengthened the good cause for the Government's failure to produce a live expert witness to rebut the theory, as it would have been difficult, if not impossible, for the Government to fly in the witness on such short notice.

Considering the totality of the circumstances, the Government was not required to secure a live expert witness to explain why Minnitt's unsupported theories were not scientifically feasible. The record contains good cause for the

district court's curtailment of confrontation as to this evidence. We find the district court's error harmless.

## C.    Missed Counseling Sessions

Finally, Minnitt challenges testimony provided by Officer Cruz regarding the frequency and timing of his missed counseling sessions. Officer Cruz did not have first-hand knowledge of these facts, but rather, the information was relayed to him by Minnitt's counselors. Unlike the evidence addressed above, these facts are not easily verified by scientific methods and therefore present a more troublesome confrontation question. *See id.* at 222 (stating that the reliability of non-scientific facts such as eyewitness observations is best tested through cross-examination); *id.* at 222 n.49 (expressing concern that the district court apparently admitted hearsay eyewitness testimony without specifically finding good cause to deny confrontation of the eyewitness).

Without objection, however, Officer Cruz testified to the following facts: (1) Minnitt violated a condition of his supervised release by missing counseling sessions that were part of his required drug treatment program; (2) he had confronted Minnitt about some of the missed sessions, and Minnitt never denied the absences; and (3) Officer Cruz modified Minnitt's supervised release as a result of Minnitt's absences from counseling, in an attempt to accommodate Minnitt's transportation issues. Minnitt does not challenge these facts on appeal.

Although Minnitt objected in the district court as to some of Officer Cruz's testimony on this topic, these unobjected-to portions of his testimony provide an adequate basis to support the district court's finding that Minnitt missed counseling sessions, in violation of one of the terms of his supervised release. *See Grandlund*, 71 F.3d at 511 (considering the releasee's failure to deny his violative behavior when confronted by his probation officer); *id.* (considering the releasee's failure to object or dispute his probation officer's testimony that the

terms of his supervised release were modified because of his violative behavior).

All that is required for the revocation of supervised release "'is enough evidence to satisfy the district judge that the conduct of the petitioner has not met the conditions'" of supervised release. *McCormick*, 54 F.3d at 219 n.3 (quoting *United States v. Irvin*, 820 F.2d 110, 111 (5th Cir. 1987)). Accordingly, we need not decide whether it would have been error for the district court to rely solely upon the counselors' hearsay statements that are challenged on appeal. *See McCormick*, 54 F.3d at 226 (finding it unnecessary to reach grounds presented on appeal where other grounds adequately supported the district court's decision); *United States v. Turner*, 741 F.2d 696, 698 (5th Cir. 1984) (same).

## III. CONCLUSION

Properly-admitted evidence supports each of the district court's findings. For the foregoing reasons, the district court did not err in revoking Minnitt's supervised release.

AFFIRMED.