**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 15, 2013

No. 12-11063

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

BRANDON J. MOSS,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
No. 4:12-CR-73-1

Before DENNIS, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Brandon Moss was indicted in the United States District Court for the Eastern District of Missouri on a charge of credit card fraud. He pleaded guilty and was sentenced to time served, followed by a two-year term of supervised release. Approximately one year later, Moss was brought to court for multiple violations of the conditions of his supervised release. He pleaded "true with an explanation" to two of the violations, which required a mandatory revocation of his supervised release. He did, however,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-11063

object to the district court's consideration of hearsay evidence regarding two separate forgery charges that affected Moss's sentence. Over Moss's objections, the district court determined that it had good cause to allow the hearsay evidence and sentenced Moss to 20 months imprisonment. Moss timely appeals and we AFFIRM.

## FACTUAL BACKGROUND

In 2011, Moss was indicted in the United States District Court for the Eastern District of Missouri on a charge of credit card fraud. The indictment charged Moss with using credit card numbers issued by the State Department Federal Credit Union to buy gift cards and other merchandise from several large retailers. According to the indictment, after obtaining the credit card numbers, Moss re-encoded the magnetic strips on debit cards bearing his own name, but containing stolen account data. Moss allegedly traveled from his home in Texas to department stores in St. Louis, Missouri in order to commit the crimes.

Moss pleaded guilty and was sentenced to time served, followed by a two-year term of supervised release beginning in May 2011. The conditions of his supervised release included a prohibition on new crimes, mandatory drug testing and counseling, payment of restitution, and notification to the Probation Office within 72 hours of being subject to questioning by law enforcement. Moss's supervised release began in Missouri but was later transferred to the Northern District of Texas.

In July 2012, Moss's probation officer petitioned the Northern District of Texas for an arrest warrant after learning that, one month earlier, Moss had pleaded guilty to a state forgery charge in Rockwall County, Texas. The probation officer later filed a supplemental petition alleging that Moss had also failed to: (1) notify his probation officer that he was cited for traffic violations; (2) submit to drug testing and counseling on several occasions; and (3) pay restitution.

2

No. 12-11063

The district court held a revocation hearing, during which Moss pleaded guilty to the Rockwall County forgery charge, pleaded "true with an explanation" to the allegation that he failed to attend drug testing and counseling sessions, and "true with an explanation" that he failed to pay restitution.[1] The government called as a witness Moss's probation officer, who testified that Moss had been convicted of forgery in Rockwall County. The probation officer also testified that Moss had missed drug testing and counseling sessions, and that Moss had only paid $100 out of $467.34 in restitution. Moss did not object to any of this testimony.

Finally, the government also questioned the probation officer on another incident, Moss's recent arrest for attempting to purchase merchandise using fraudulent credit cards at a Dillard's department store in Fort Worth, Texas. The government then moved to introduce a police report from the Fort Worth Police Department describing the incident ("Fort Worth offense report")[2] and separately, moved to introduce a police report from the Rockwall County Police Department describing the circumstances leading up to Moss's arrest for forgery in that incident ("Rockwall County offense report"). Defense counsel objected on the ground that the reports were hearsay and that Moss had a due process right to confront and cross-examine any declarants. The government responded that

---

[1] After Moss's probation officer testified that Moss provided notification of his traffic violations, the Probation Office dismissed this charge.

[2] According to the Fort Worth offense report, Moss was detained outside Dillard's after employees identified him to the arresting officer. Moss allegedly had purchased approximately $500 of merchandise at one register, where he attempted to use two credit cards that were declined before successfully providing a third. According to the report, Moss then purchased another $500 of goods at a separate register, but only after his first two cards were declined and a third was finally accepted. The credit cards displayed Moss's name and account number, but were actually programmed with a different stolen account number. At the scene, the arresting officer took photos of the credit cards and the fraudulently purchased merchandise. This evidence and documentation of the transactions at the registers were all submitted along with the police report.

No. 12-11063

there was no need for the Rockwall County declarant to testify because Moss pleaded guilty to that forgery offense. Furthermore, the government told the court that it attempted to contact the Forth Worth declarant (specifically, the arresting officer), but had not received a response. The court admitted both offense reports over defense counsel's objections.

The court ultimately determined that Moss had violated the conditions of his supervised release prohibiting him from committing additional crimes and requiring him to submit to drug testing and counseling. As a result, the court concluded that the circumstances required the mandatory revocation of Moss's supervised release.[3] Although the Sentencing Guidelines recommended 6 to 12 months imprisonment, the court noted that Moss's offenses, considered together, warranted 20 months imprisonment.[4] Moss timely appeals.

## STANDARD OF REVIEW

We review a district court's decision to revoke supervised release for abuse of discretion. *United States v. Grandlund*, 71 F.3d 507, 509 (5th Cir. 1995). "We review alleged violations of a defendant's Sixth Amendment confrontation right *de novo* . . . subject to harmless error review." *United States v. Skelton*, 514 F.3d 433, 438 (5th Cir. 2008); *see also Grandlund*, 71 F.3d at 509 ("[T]he constitutional challenge about the right of confrontation of adverse witnesses is reviewed de novo.").

## DISCUSSION

A defendant facing revocation of supervised release "enjoys more limited rights than does a defendant facing a criminal prosecution." *United States v.*

---

[3] *See* 18 U.S.C. § 3583(g)(3) ("If the defendant . . . refuses to comply with drug testing imposed as a condition of supervised release . . . the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3).").

[4] That sentence was still within the statutory maximum of two years. *See* 18 U.S.C. § 3583(e)(3).

No. 12-11063

*Minnitt*, 617 F.3d 327, 332 (5th Cir. 2010); *see also United States v. McCormick*, 54 F.3d 214, 221 (5th Cir. 1995) (equating the protections afforded to defendants facing revocation of parole with those afforded defendants facing revocation of supervised release). Still, because a revocation proceeding places a defendant's liberty at stake, "due process requires that [the] defendant be given a fair and meaningful opportunity to refute and challenge adverse evidence to assure that the court's relevant findings are based on verified facts." *Grandlund*, 71 F.3d at 510. The Supreme Court has previously held that this includes the right of a defendant to confront a declarant "who has given adverse information on which parole revocation is to be based." *Morrisey v. Brewer*, 408 U.S. 471, 478 (1972). The question remains whether a defendant, such as Moss, has a due process right to confront adverse witnesses regarding facts that could materially increase his sentence.[5]

Our caselaw does not provide a definitive answer on this issue.[6] Nonetheless, even if we were to hold in favor of Moss on that issue, we have previously recognized that, "[w]hile due process provides the defendant in a revocation proceeding the right to confront and cross-examine adverse witnesses,

---

[5] Although the revocation of Moss's supervised release was mandatory under 18 U.S.C. § 3583(g)(3) due to his failure to complete drug testing and counseling, the district court appears to have taken into account the Rockwall County and Forth Worth incidents in determining that Moss's repeated illegal activities served as additional reasons to impose a sentence of 20 months imprisonment.

[6] In *McCormick*, a panel of this court suggested that a defendant has a due process right to confront adverse witnesses on facts that do not provide the basis for mandatory revocation, but nonetheless could increase his sentence. *See* 54 F.3d at 219 (observing that the district court based McCormick's sentence on his unemployment and possession of a controlled substance and, because McCormick's unemployment was undisputed, it would only consider whether the district court erred in admitting hearsay on the controlled substance charge). In contrast, in a recent unpublished opinion, another panel of this court decided that a defendant's right to confront adverse witnesses does not extend to the sentencing context. *See United States v. Jimenez*, 275 F. App'x 433, 438 (5th Cir. 2008) ("Therefore, because Jimenez does not challenge the decision to revoke his supervised release, but only his revocation sentence, the right to confrontation under *Morrissey* does not apply to this case.").

the district judge may deny such right if there is good cause to do so." *Minnitt*, 617 F.3d at 332; *see also Grandlund*, 71 F.3d at 510. In assessing whether good cause exists, a district court must "weigh the defendant's interest in confrontation of a particular witness against the Government's proffered reasons for pretermitting the confrontation." *Minnitt*, 617 F.3d at 333.

At the revocation hearing, the government adequately explained why cross-examination of the Rockwall County and Forth Worth offense report declarants was neither necessary nor possible. As for the Rockwall County incident, the government argued, and the district court agreed, that cross-examination was unnecessary because Moss had already pleaded guilty to those allegations. According to the district court, "under the circumstances it would be totally unreasonable to expect the police officers to be brought up here for [Moss's] hearing." As for the Forth Worth incident, the government told the court that it had tried but had not been able to contact the arresting officer who drafted the offense report. The court responded that it was "satisfied . . . that the Government made a reasonable attempt" to bring the officer to court, and "that the report itself is reliable enough evidence that it should be admitted considering the inability of the Government to cause the person who prepared the report to be present." The government therefore proffered reasonable justifications for admitting the hearsay evidence without cross-examination.

Moss argues that the government's interests in proceeding without cross-examination are still outweighed by his own. However, consideration of the factors laid out in *United States v. Carrion*, 457 F. App'x 405 (5th Cir. 2012),[7]

---

[7] In *Carrion*, we focused on the following factors in determining a defendant's interest in cross-examination:

> (1) whether the evidence at issue is important to the district court's ultimate revocation determination; (2) whether the evidence relates to an alleged violation that triggers mandatory revocation or a mandatory minimum sentence; (3) whether the releasee had an opportunity to refute the evidence through methods other than cross-examination (such as re-testing, subpoenas,

No. 12-11063

leads us to conclude that the district court had good cause to deny Moss's request for cross-examination. First, the Rockwall County and Fort Worth offense reports were irrelevant to the court's initial decision to revoke. Instead, revocation was mandatory as a result of Moss's failure to comply with drug testing requirements.[8] Second, the offense reports did not provide the court with an independent ground for mandatory revocation, did not trigger a mandatory minimum sentence, and did not increase his statutory maximum sentence. Third, Moss had means available to refute the evidence set out in the reports. For example, Moss could have subpoenaed either or both of the officers who wrote the offense reports. He also could have subpoenaed the other individuals who were with him when he was arrested in Rockwall County. Alternatively, he could have obtained the allegedly falsely encoded credit cards to show that they were not in fact tampered with.

Fourth, while the offense reports do not involve scientifically verifiable facts, they contain other sufficient "indicia of reliability." *Grandlund*, 71 F.3d at 510. We previously "have considered police reports reliable in the sentencing context," *Jimenez*, 275 F. App'x at 438 (citing *United States v. Posada-Rios*, 158 F.3d 832, 881 (5th Cir.1998) and *Griffin v. Leonard*, 821 F.2d 1124, 1126 (5th Cir. 1987)), particularly if those reports are "long and detailed," *id.* Here, there is no dispute that offense reports were thorough; indeed, that high level of detail is one of the primary reasons that Moss objects to their admission into evidence. Fifth and finally, Moss presented no evidence to support an alternate theory, nor

---

or presentation of expert testimony); (4) whether the testimony at issue involves "scientifically-verifiable facts;" and (5) whether the releasee has presented evidence to support the alternate theory that he seeks to explore on cross-examination.

*Id.* at 411 (citing *Minnitt*, 617 F.3d at 333–35 and *McCormick*, 54 F.3d at 222–23).

[8] *See* note 3, *supra*.

No. 12-11063

did he articulate any such theory, that he would have sought to explore through cross-examination of the offense report drafters.

Taken together, these factors indicate that the district court did not err in finding that the government's interests in admitting the hearsay outweighed the defendant's interest in cross-examination.

## CONCLUSION

Because the district court had good cause to deny Moss's request for cross-examination, the judgment below is AFFIRMED.