# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 29, 2013

No. 12-11060
Summary Calendar

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

BRYAN BURNETT,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:12-CR-139-1

Before HIGGINBOTHAM, DENNIS, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Bryan Burnett appeals the district court's judgment revoking his supervised release and sentencing him to twelve months and one day in prison. Burnett pleaded true to three "technical" violations of his supervised release conditions but contested the allegation that he violated the conditions by committing other crimes, specifically, assaulting a neighbor and spanking a child with a belt without parental permission. The district court found that,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

in addition to the admitted violations, Burnett had violated the condition that prohibited him from committing another crime by assaulting his neighbor but not by disciplining the child. Burnett appeals the sentence imposed following the revocation of his supervised release, arguing for the first time on appeal that the district court erred in relying in part on hearsay statements regarding the assault allegation in violation of his due process right to confrontation. Because we cannot conclude on the record that the error affected Burnett's substantial rights, we affirm.

## I.

In 2008, Bryan Burnett pleaded guilty to possession with intent to distribute fifty kilograms or more of marijuana and was sentenced to thirty-six months in prison and two years of supervised release. Burnett began his term of supervised release on May 11, 2011. In September of 2012, his probation officer alleged that Burnett had violated the conditions of his supervised release, and initiated proceedings to revoke his status as a releasee.

The probation officer alleged that Burnett violated the terms of his supervised release by: (1) committing other crimes, *viz.*, allegedly punching a neighbor on March 30, 2012, and spanking a child with a belt without the parent's permission on September 18, 2012; and (2) committing a number of "technical" violations of the terms of his supervised release, *viz.*, submitting untruthful reports to his probation officer for eight months; failing to notify his probation officer of changes in his residence and employment; associating with a convicted felon; failing to answer truthfully inquiries of his probation officer regarding his residence and his association with a convicted felon; and failing to report his contact with law enforcement officers. Burnett's alleged contact with law enforcement officers included several speeding tickets and one

incident during a traffic stop in which Burnett allegedly brandished an Exacto knife, causing the officer to draw his weapon and order Burnett to drop the knife; Burnett complied and stated, "shoot me, go ahead and shoot me," and was ultimately released without a charge.  Burnett pleaded "not true" to violating the conditions by committing the two alleged assaults but pleaded "true" to the remaining, "technical" violations.

Burnett's probation officer testified about the alleged March 30 assault but acknowledged that she lacked personal knowledge of the incident, and instead based her testimony on information from Dallas police officers, a police report, photographs of the victim obtained from the officers and from the victim, and Burnett's,  his girlfriend's,  and the victim's descriptions of the incident.  Among other things, the probation officer testified that Burnett "told [her] that he had put his hands on [the victim] and that he went to jail, that he had messed up[.]" Natalia Latin, who lived with Burnett for a period of time, testified during the revocation hearing about Burnett's alleged assault on their neighbor.  She testified that, based on what her son had told her, she believed that Burnett assaulted the neighbor because the neighbor, had "made some type of gesture or statement that made [her] son feel threatened and [Burnett] did what he felt like he needed to do to protect him[.]"  Both Ms. Latin and the probation officer also testified about the alleged spanking incident.  Ms. Latin testified that Burnett had disciplined her son by spanking him because her son lied to Burnett about a disciplinary issue at school.  Burnett argued that there were no appropriate documents to show that the spanking was a violation that would result in increasing his advisory guidelines range above one year.

The Government also argued that Burnett had disregarded the conditions of his supervision, as shown by his technical violations, and in light of that, Burnett's long history of violence, and the two alleged assaults, it

requested a sentence of eighteen months. Burnett acknowledged that he had a history of serious violence as a juvenile but pointed to the fact that now, at forty years old, he had a long history of employment, and the crime for which he was on supervision was not a violent offense. He asked the court to continue his supervision within a halfway house or in community service or, alternatively, to give him a short sentence at the bottom of the advisory range (between three and ten months).

The district court revoked Burnett's supervised release and sentenced him to a year and a day in prison. The district court explained:

> Having heard the motion to revoke supervised release and the defendant's admission of true to some of the allegations in the motion, it is the opinion of the court the motion should be granted. And regardless of whether it's a grade B or grade A violation the result is the same. I'm finding him—that he violated all the ones that he admitted he violated and so this is—I'm basing it on that.
>
> And I do find that he did violate condition number 1, with regard to the incident at the Bayou Bend Apartments [on March 30] and that he did hit that young man with regard to that.
>
> With regard to the spanking incident, I'm not basing it on that. I'm just not.
>
> So based upon that I'm going to sentence the defendant to the custody of the United States Bureau of Prisons for a term of 12 months.
>
> And I'm not ordering any further supervised release. I don't think this has—it just hasn't suited Mr. Burnett. I don't think we're doing him any good.

Burnett filed a timely notice of appeal.

## II.

Burnett contends that the district court erred by admitting out-of-court statements regarding the alleged assault on his neighbor in violation of his due process right to confront adverse witnesses against him. As Burnett concedes, because he did not raise this claim of error in the district court, our review is

limited to plain error. *See Puckett v. United States*, 556 U.S. 129, 135 (2009); Fed. R. Crim. P. 52(b). To prevail, Burnett must show a forfeited error that is clear or obvious and affects his substantial rights. *Puckett*, 556 U.S. at 135. Even if he makes such a showing, we will not exercise our discretion to correct the error unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

## III.

### A.

Due process requires that a person in supervised release revocation proceedings have "the right to confront and cross-examine adverse witnesses[,] . . . unless the hearing officer specifically finds good cause for not allowing confrontation[.]" *United States v. McCormick*, 54 F.3d 214, 221 (5th Cir. 1995). While "[r]evocation hearings are not part of the criminal prosecution [and are] are not formal trials, . . . [b]ecause a person's liberty is at stake, . . . due process requires that a defendant be given a fair and meaningful opportunity to refute and challenge adverse evidence to assure that the court's relevant findings are based on verified facts." *United States v. Grandlund*, 71 F.3d 507, 509-10 (5th Cir. 1995), *opinion clarified*, 77 F.3d 811 (5th Cir. 1996) (citing, *inter alia*, *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973); *Morrissey v. Brewer*, 408 U.S. 471 (1972)). "The defendant's rights in a revocation hearing include a qualified right to confront and cross-examine adverse witnesses." *Id.* at 510; *see also* Fed. R. Crim. P. 32.1(2)(C) (providing that, in a supervised release revocation hearing, the releasee "is entitled to . . . an opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear"). "The confrontation of a particular witness may be disallowed upon a finding of good cause. In its determination whether

good cause exists, courts must employ a balancing test which weighs the defendant's interest in the confrontation of a particular witness against the government's interest in the matter. A critical consideration is the indicia of reliability of the challenged evidence." *Grandlund*, 71 F.3d at 510 (citations omitted). To that end, "there must be an explicit, specific finding of good cause, and the reasons should be made a part of the record of the revocation hearing." *Id.* at 510 n.6.

Thus, our precedents have long established that district courts must apply this balancing test when presented with hearsay testimony arguably in violation of the releasee's due process right to confrontation. *See, e.g.*, *Grandlund*, 71 F.3d at 510 & n.6 ("In its determination whether good cause exists, courts *must* employ a balancing test which weighs the defendant's interest in the confrontation of a particular witness against the government's interest in the matter. . . . [T]here must be an explicit, specific finding of good cause, and the reasons should be made a part of the record of the revocation hearing." (emphasis added)); *United States v. Alaniz–Alaniz*, 38 F.3d 788, 791 (5th Cir. 1994) (assuming the district court's failure to balance the releasee's due process confrontation right with good cause was plain error, and affirming on the ground that the error did not affect the releasee's substantial rights); Fed. R. Crim. P. 32.1(2)(C) (providing that, in a supervised release revocation hearing, the releasee "is entitled to . . . an opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear" (emphasis added)).[1] The constitutional error Burnett alleges was clear or obvious under the foregoing authorities.

---

[1] *Cf. United States v. Mendoza*, 414 F. App'x 714, 718 (5th Cir. 2011) (unpublished) (assuming district courts are not affirmatively required to conduct a balancing test *sua sponte* and finding no plain error).

The government argues that the denial of Burnett's due process right to confrontation was not plain error because Burnett did not object to the admission of the hearsay evidence during his revocation hearing. Specifically, the government argues that the right to confrontation in a final revocation hearing is conditioned upon the defendant's affirmative request to confront a hearsay witness, citing as support *McBride v. Johnson*, 118 F.3d 432, 437 (5th Cir. 1997) (noting that, during a preliminary hearing on parole revocation proceedings, the right to confront and cross-examine witnesses "is a 'conditional one'—the condition being the parolee's affirmative request to confront an adverse witness"). The government's reliance on *McBride* is misplaced. There, we specifically distinguished between a parolee's limited right to confront witnesses at a *preliminary* hearing on parole revocation proceedings and a parole "final revocation hearing whose purpose goes beyond a determination of probable cause 'to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation.'" *Id.* (quoting *Gagnon*, 408 U.S. at 438). In final parole revocation hearings, courts must adhere to all of the "essential protections required by the Due Process Clause," including "'the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)[.]'" *Id.* (emphasis omitted) (quoting *Gagnon*, 408 U.S. at 489). The reason, we explained, for this rule is that hearsay evidence "'presents a two-fold problem: it prevents the parolee from confronting and cross-examining the declarant, and unreliable hearsay undermines the accuracy of the fact-finding process.'" *Id.* at 438 (quoting *Farrish v. Miss. State Parole Bd.*, 836 F.2d 969, 798 (5th Cir. 1988)). Parolees and releasees may face steep penalties if they are found in violation of their terms of release. *See, e.g.*, *id.* Accordingly, we have held that, for final, as opposed to preliminary,

revocation proceedings where the releasee's "liberty is at stake, . . . due process requires that [he] be given a fair and meaningful opportunity to refute and challenge adverse evidence"; to that end, "courts must employ a balancing test which weighs the defendant's interest in the confrontation of a particular witness against the government's interest in the matter." *Grandlund*, 71 F.3d at 509-10.

It is undisputed that much of the testimony that the government presented constituted hearsay, including the parole officer's testimony regarding the assault allegations based not upon her own first-hand knowledge but upon police reports and out-of-court statements by the victim, and Ms. Latin's testimony summarizing what her son had told her about the incident. *See* Fed. R. Evid. 802.[2] Burnett is correct that the hearsay statements were inadmissible against him at the revocation hearing without an opportunity to confront the witnesses against him unless there was good cause to deny the opportunity to confront them. *See Grandlund*, 71 F.3d at 510; *McBride v. Johnson*, 118 F.3d at 437-38; Fed. R. Crim. P. 32.1(2)(C). However, because Burnett did not object during the hearing, we will not reverse and remand for the district court to make a good-cause determination in the first instance unless Burnett has met his burden under the plain error rule to show that the error affected his substantial rights. We therefore turn to that question.

## B.

On the next prong of plain error review, whether the error affected the defendant's substantial rights, Burnett must show that, but for the asserted error, the district court would not have revoked his term of supervised release

---

[2] By contrast, Burnett does not challenge the probation officer's testimony that Burnett admitted to her that he had "put his hands on" his neighbor. *See* Fed. R. Evid. 801(d)(2).

or that there is a reasonable probability that, but for the asserted error, he would have received a lower sentence. *See* 18 U.S.C. § 3583(e); *United States v. Davis*, 602 F.3d 643, 647 (5th Cir. 2010); *see also Alaniz–Alaniz*, 38 F.3d at 791.

Even if Burnett had not committed a Grade A or B violation within the meaning of the Sentencing Guidelines, the district court was authorized to revoke Burnett's supervised release if it found by a preponderance of the evidence that he had violated a condition of his release. *See* 18 U.S.C. § 3583(e)(3); U.S.S.G. § 7B1.3(a)(2). Even without the now-challenged evidence regarding the March assault, the evidence of Burnett's admitted technical violations, and his plea of "true" to those technical violations, supported the district court's revocation decision. Among those technical violations was his failure to report the traffic stop incident during which Burnett brandished an Exacto knife. Moreover, Burnett does not challenge the admissibility of his probation officer's testimony that Burnett admitted to "putting his hands on" his neighbor during the March 30 incident or the photographs of the victim's bruises.

The district court, after a review of all of these factors, concluded that twelve months and one day of imprisonment, without the imposition of any further terms of supervised release, was the appropriate sentence for Burnett. On the record before us, we conclude that Burnett has not met his burden of showing that, but for the asserted error regarding the March assault, the district court would not have revoked his supervised release or would have given him a lower sentence upon revocation. Because Burnett fails to demonstrate that the error affected his substantial rights, reversal upon plain error review is not warranted.

No. 12-11060

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.