# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 21, 2011

Lyle W. Cayce
Clerk

No. 10-10112

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MARIO JUSTICE,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:04-CR-139-1

Before GARZA, STEWART, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:[*]

Mario Justice ("Justice") appeals the district court's decision to admit two hearsay statements over Justice's objections at a revocation proceeding. Because we conclude that the district court's admission of the testimony without allowing Justice an opportunity to cross-examine the witnesses and without an explicit finding of good cause violated Justice's due process rights, we REVERSE and REMAND.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-10112

## I. FACTS AND PROCEDURAL HISTORY

In 2004, Justice pleaded guilty to possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). He was sentenced to 63 months of imprisonment and a five-year term of supervised release. In June 2008, Justice was released from custody and began serving his term of supervised release.

In December 2009, the probation office filed a petition to revoke Justice's supervised release, alleging that Justice violated several conditions of his supervised release.[1] According to the petition, the Fort Worth Police Department ("FWPD") executed a narcotics search warrant on July 8, 2009 at a residence (not owned by Justice) located in Fort Worth, Texas. The FWPD found 6.5 grams of crack cocaine, two scales, $142 in cash, two cell phones, and a .45-caliber handgun on a table in the living room of the residence. Police also found three to four rocks of crack cocaine in the front bathroom and two baggies containing approximately 31.5 grams of crack cocaine in the toilet. Justice and several other individuals, including a woman named Chastity Jefferson ("Jefferson"), were in the house at the time. The petition alleged that Justice admitted that one of the cell phones found on the table belonged to him and that Jefferson submitted a written statement to the police in which she indicated that Justice ran into the bathroom and said, "I gotta flush this dope."

A federal public defender was appointed to represent Justice in the revocation proceeding. At the revocation hearing, Justice admitted to violations

---

[1] Specifically, the petition alleged that Justice violated the terms of his supervised release by committing another federal, state, or local crime; possessing illegal controlled substances; possessing a firearm; possessing, using, distributing or administering "any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician"; frequenting "places where controlled substances are illegally sold, used, distributed, or administered"; and associating with "persons engaged in criminal activity."

No. 10-10112

related to his failure to complete a Comprehensive Sanction Center Program, but he contested the allegations related to the July 8, 2009 incident in Fort Worth.

The Government presented two witnesses: probation officer Jaime Espinosa ("Espinosa") and police officer Carlos Cespedes ("Cespedes"). Before any evidence was presented, Justice objected to any testimony from Espinosa relating to the offenses that was based on the police report or statements from other individuals not present at the hearing on the grounds that allowing such evidence would violate his right to confront and cross-examine the authors of those documents. The court allowed the testimony, concluding that although it was hearsay, it bore adequate indicia of reliability.

Espinosa testified that Justice lied to him about having a job and that Justice failed to show up for his scheduled urinalysis appointments. Justice also admitted to Espinosa that he had been caught forging staff signatures on leave passes from the Comprehensive Sanction Center Program and on employment verification forms. According to Espinosa, Justice also told him that he had been at a known crack house, but he claimed that he had gone there to pick up a dog he purchased the day before.

Cespedes, one of the officers who executed the search warrant, was called to testify about the circumstances surrounding Justice's arrest at the crack house. He testified that the house had a closed-circuit camera system that monitored the area outside of the house, which he testified was not uncommon in a crack house. He observed a table in the front room "with a lot of plastic baggies, some crack cocaine, [and] a couple of digital scales." He also saw guns on the couch and on the floor; one gun was found under a purse on a couch. Cespedes testified that he seized approximately 26 grams of cocaine from the house; some of the cocaine was on the table in the front room, and some was in the bathroom. However, he could not recall encountering Justice in the house,

and he could not identify anyone in the courtroom as being in the house on that day.

The Government asked Cespedes to identify the police report written by police officer Christianson ("Christianson")—another officer present at the scene—and Jefferson's written statement to police. When the Government moved to introduce Christianson's report and Jefferson's statement as exhibits, Justice renewed his earlier objection to the admission of hearsay evidence without an opportunity to confront the witnesses. Justice argued that Jefferson was not present in the courtroom, that no reason had been given why she had not been called to testify, and that "even the case law provided by the government recognizes the right to confront and cross-examine in a revocation hearing absent good cause."

The district judge allowed the hearsay testimony, concluding that it was reliable because it was made by an individual who was present in the house and was corroborated by independent evidence. Specifically, the statement alleged that a person wearing orange shorts was the one who yelled that he had to "flush the dope," and Justice was the only one in the house wearing orange shorts.

Cespedes testified that he found Jefferson and another individual, Patricia King, in the front bathroom of the crack house and that there were approximately 30 to 40 grams of cocaine in that bathroom. He also testified that, according to the police report, Justice was apprehended in the northwest bedroom of the house. No firearms or drugs were found in that bedroom.

The district court found that there was adequate evidence that Justice violated the conditions of his supervised release as set forth in the petition, adopted the statements contained in the petition, and revoked Justice's supervised release, sentencing him to 24 months of imprisonment and a three-year term of supervised release. The judge specifically noted that the sentence imposed was mandatory pursuant to 18 U.S.C. §§ 3583(g)(1) and (2)

because the evidence showed that Justice possessed a controlled substance and a firearm. Justice filed a timely notice of appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction to revoke Justice's supervised release under 18 U.S.C. § 3583(e). *See United States v. Jackson*, 426 F.3d 301, 304 (5th Cir. 2005). This court has jurisdiction to review the revocation of a defendant's supervised release pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. "Alleged violations of the Confrontation Clause are reviewed de novo, but are subject to a harmless error analysis." *United States v. McCormick*, 54 F.3d 214, 219 (5th Cir. 1995) (internal citation omitted).

## III. DISCUSSION

A releasee at a revocation hearing is not due the full panoply of rights that apply to a criminal prosecution; however, he is not without rights. The minimal requirements of due process for a revocation proceeding are explained in *Morrissey v. Brewer*, 408 U.S. 471, 488-89 (1972). Among those requirements, the releasee must be afforded "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Id.* at 480, 488-89.

Thus, although due process provides the defendant in a revocation proceeding the right to confront and cross-examine adverse witnesses, the district court may deny the releasee the right to confrontation upon a finding of good cause. *Id.* at 489; *see also United States v. Grandlund*, 71 F.3d 507, 510 n.6 (5th Cir. 1995). The district court must specifically find good cause and must make the reasons for its finding part of the record. *United States v. Minnitt*, 617 F.3d 327, 333 (5th Cir. 2010). "In evaluating good cause, the district court must weigh the defendant's interest in confrontation of a particular witness against the Government's proffered reasons for pretermitting the confrontation." *Id.* "Reliability of the challenged hearsay is a critical consideration in a district

No. 10-10112

court's determination of whether good cause exists to disallow confrontation." *Id.* at 334 (internal quotation marks and citation omitted).

In view of these precedents, we have affirmed the allowance of hearsay testimony without cross-examination in specific cases. *See Minnitt*, 617 F.3d at 334-35; *Grandlund*, 71 F.3d at 510-11; *McCormick*, 54 F.3d at 222-26; *United States v. Kindred*, 918 F.2d 485, 487 (5th Cir. 1990). However, each of these cases concerned the admissibility of hearsay testimony from a laboratory report or a laboratory technician in revocation proceedings. We allowed such testimony without a right to cross-examine because "'a releasee's interest in cross-examining a laboratory technician regarding a scientific fact' is minimal because the truth of the fact can be 'verified through the methods of science' rather than 'through the rigor of cross-examination.'" *Minnitt*, 617 F.3d at 333 (quoting *McCormick*, 54 F.3d at 222). In such circumstances, the releasee has other options for refuting the Government's evidence, such as re-testing. *Id.* at 333-34. In contrast, the Government had a strong interest in "avoiding the expense, difficulty, and delay in securing the lab technicians to testify." *Id.* at 334 (citing *Grandlund*, 71 F.3d at 511; *McCormick*, 54 F.3d at 224; *Kindred*, 918 F.2d at 487). Additionally, "lab results bear a substantial indicia of reliability, which weighs in favor of the Government's good cause to deny confrontation of the technicians." *Id.* In *Grandlund*, *McCormick*, and *Kindred*, we reached similar conclusions for similar reasons. *Grandlund*, 71 F.3d at 510-11; *McCormick*, 54 F.3d at 222-26; *Kindred*, 918 F.2d at 487.

In contrast, when the charge against the releasee turns on a credibility choice between the releasee and a hearsay declarant whose testimony has not been shown to be reliable, we have held that a right of confrontation is required. *See McBride v. Johnson*, 118 F.3d 432, 433 (5th Cir. 1997); *Farrish v. Mississippi State Parole Board*, 836 F.2d 969, 978 (5th Cir. 1988). This is especially true

No. 10-10112

when the hearsay declarant is a self-interested witness like Jefferson. *Farrish*, 836 F.2d at 978.

Applying the law to the facts of this case, we conclude that the district court erred in admitting the hearsay testimony for two reasons: (1) good cause to allow the hearsay testimony, as required by *Minnitt*, 617 F.3d at 333 was lacking; and (2) the hearsay testimony was not inherently reliable. We also find that the error was not harmless.

A.    Good cause was lacking

In this case, the district court made no findings regarding whether there was good cause to allow the hearsay testimony of Jefferson and Christianson. Further, the district court did not weigh Justice's interest in cross-examination against the Government's reasons for not presenting the witnesses. Even if we could imply a finding of good cause from the court's decision, reviewing the record before the district court, we conclude that it would not support such a finding. The Government offered no evidence that it would be difficult or expensive to procure these witnesses, nor did it offer evidence that they were unavailable. There is absolutely no evidence about Jefferson (aside from the Government's late-proffered and unsupported allegation that Jefferson did not testify out of concern for her safety) or Christianson.

In contrast with the Government's weak excuse for failing to provide Christianson and Jefferson, Justice had a substantial interest in cross-examining these witnesses, as they were the only witnesses tying him to the guns and the drugs. Justice was found in a bedroom away from both the guns and the drugs.[2] Only two witnesses testified: Espinosa, who was not there and who did not testify about Justice's arrest other than to say that it occurred,

---

[2] The dissent's suggestion that Justice was found in the bathroom with the drugs is contrary to the record, which shows that Justice was found in the bedroom away from both the drugs and the guns.

No. 10-10112

and Officer Cespedes, who did not even recognize Justice's name and could not identify him in the courtroom. Neither of these witnesses could provide first-hand knowledge of any evidence that Justice possessed drugs or a gun. Additionally, as we noted in *Minnitt*, the releasee's interest in confrontation is "magnified where the evidence, if believed, triggers application of a mandatory minimum sentence," as it does in this case. 617 F.3d at 333; *see also* U.S. SENTENCING GUIDELINES MANUAL §§ 7B1.1(a), 7B1.3(a) (2010). Thus, weighing the parties' competing interests, the evidence shows that good cause did not exist for admitting this testimony.

B.     The hearsay testimony was not "inherently reliable."

We also conclude that the hearsay statements were not inherently reliable. Jefferson's statement was inherently unreliable because it exculpated herself and inculpated Justice. Jefferson—not Justice—was found in the bathroom with the drugs, and she had an incentive to claim that the drugs belonged to a "man in orange shorts" to avoid personal association with them. Therefore, Jefferson's hearsay statement bore no indicia of reliability. The fact that her statement was corroborated by the police report does not make it reliable, as the police report was based on her statement.[3]

Christianson's report was also not inherently reliable as this court has previously applied that term, because it was based on Jefferson's testimony and Christianson's observations. This court's decisions in *Minnitt*, 617 F.3d at 334-35; *Grandlund*, 71 F.3d at 510-11; and *McCormick*, 54 F.3d at 222-26, do not support a conclusion that this testimony was reliable. By stark contrast to the

---

[3] The dissent's reliance on the fact that the police report corroborates Jefferson's statement about the orange shorts is irrelevant, as it does nothing to rule out the possibility that Jefferson saw Justice wearing orange shorts and chose (falsely) to shift the responsibility for the drugs to the "person wearing orange shorts"—i.e., Justice. Jefferson's credibility is thus central to the question of whether Justice was "merely there" picking up a dog, as he claims, or possessor of the drugs and guns, as necessary to find the Class A violation.

results of a laboratory report, Justice could not have verified Jefferson or Christianson's testimony independently. The information here is purely based upon observation of uncalled witnesses, not "scientific processes."

Cespedes's testimony also does not lend an indicia of reliability to Christianson's police report. Cespedes was called to testify about the circumstances surrounding Justice's arrest at the crack house. He testified about the drugs and guns seized from the house and that having a closed-circuit television was not uncommon in a crack house; however, *he could not recall encountering Justice in the house*, despite the undisputed evidence that Justice was there. Thus, any indicia of reliability from Cespedes is unrelated to the charges against Justice.

Additionally, the Government's reliance on *United States v. Denson*, 224 F. App'x 417 (5th Cir. 2007) (unpublished), is unpersuasive. In *Denson*, the court concluded that a parolee's due process rights were not violated when the district court relied on a police report without giving the parolee the chance to confront the witness who authored the report. *Id.* at 418. The court stated that "[a]lthough *Morrissey* recognized a right to confrontation at revocation proceedings, the right is a limited one in that revocation hearings should be flexible enough that a court may consider material that would not be admissible in an adversary criminal trial. Hearsay evidence is such material . . . ." *Id.* (internal quotations and citations omitted). *Denson* does not provide any detail about the facts upon which the court relied in the police report and provides no indication that the court used the hearsay alone to establish *guilt*, as it did in this case. Therefore, *Denson* is inapplicable to these facts.[4] For these reasons,

---

[4] If it did, indeed, stand for the proposition that "hearsay is generally okay" it would conflict with *Morrissey*, a Supreme Court case which we are bound to follow rather than an unpublished case of our court.

we conclude that the hearsay testimony in this case did not bear sufficient indicia of reliability.

C.    The error was not harmless.

Finally, the error in denying Justice's right to confront the witnesses against him was not harmless. The out-of-court statements made by these witnesses were the only evidence directly linking Justice to the guns and the drugs. A drug violation or a firearm violation is a Grade A violation of supervised release under section 7B1.1 of the Sentencing Guidelines, and thus requires mandatory revocation of Justice's supervised release under section 7B1.3. *See* U.S. SENTENCING GUIDELINES MANUAL §§ 7B1.1(a), 7B1.3(a) (2010). The other violations to which Justice admitted were Grade C violations, which did not require mandatory revocation. *Id.* § 7B1.3(a). Grade A violations also entail harsher sentences under the Sentencing Guidelines than do Grade C violations. *See id.* § 7B1.4(a).

Supervised release may be revoked when there "is enough evidence to satisfy the district judge that the conduct of the petitioner [did not meet] the conditions" of supervised release. *Minnitt*, 617 F.3d at 335-36. Although Justice admitted to being at the crack house and failing to abide by several other terms of his supervised release (Grade C violations), there is no evidence tying him to either the drugs or the guns (Grade A violations) without the hearsay testimony.[5] Without the hearsay testimony, the revocation of the term of his supervised release would have been discretionary, and the sentence imposed would likely have been less severe. *See* U.S. SENTENCING GUIDELINES MANUAL

_____

[5] We do not disagree with the dissent's suggestion that Justice violated several terms of his supervised release; rather, we disagree with the dissent's conclusion that Justice's violations were Grade A violations. Because we hold that the district court erred in admitting the only testimony tying Justice to the guns and the drugs, we necessarily reverse the finding that Justice committed Grade A violations. We agree that the evidence shows that Justice committed several Grade C violations of his supervised release.

§§ 7B1.1(a), 7B1.3(a), 7B1.4(a) (2010).  Therefore, we cannot conclude that the error was harmless.

## IV.  CONCLUSION

For the above reasons, we REVERSE and REMAND for proceedings consistent with this opinion.

No. 10-10112

STEWART, Circuit Judge, dissenting:

Although the panel majority and I view this case according to the same jurisprudential landscape, our perspective on the disposition of this appeal differs. Accordingly, I dissent.

The Supreme Court has long recognized that there exists a right to cross-examine and confront adverse witnesses in a parole revocation hearing. *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). This due process protection is afforded to individuals in supervised release proceedings, as well. *McCormick*, 54 F.3d at 221. Yet, in revocation hearings, the right is not so absolute such that it rises to the same protections afforded to defendants in adversarial criminal proceedings; for instance, a district court presiding over a revocation hearing "may consider material that would not be admissible in . . . . a criminal trial." *Morrissey*, 408 U.S. at 489. *Morrissey* states that "there is no thought to equate this . . . . stage of parole revocation to a criminal prosecution . . . . the process should be flexible." *Id.* In fact, *Morrisey* explains that in the parole revocation context, a parolee accused of committing another crime is subject to revocation hearings (versus new prosecutions) "because of the procedural ease of recommitting the individual on the basis of a lesser showing by the State." *Id.* at 479. So, parolees are entitled to decidedly less procedural due process than their "traditional" criminal defendant counterparts. We find reversible error based on due process when the evidence upon which the district court relied lacks an indicia of reliability. *United States v. Kindred*, 918 F.2d 485, 486 (5th Cir. 1990).

Here, the record demonstrates that the district court was aware of the legal standard applicable to Justice's parole revocation hearing. Moreover, the district court concluded that *Kindred*'s requirement of an indicia of reliability was present. The district court received Fort Worth Police Officer Christianson's police report and implicitly concluded that it had an indicia of reliability from

12

Officer Cespedes's testimony, who responded to the scene and gathered evidence. The court was also persuaded by the testimony of Justice's probation officer, Jamie Espinosa, which revealed certain admissions placing Justice in the known drug house where dozens of grams of crack cocaine were found in plain view, and where an additional 31 grams were recovered after breaking apart a toilet in the bathroom where Justice was immediately before he was physically arrested in a nearby bedroom.  It was probably not lost on the district court that the drug house had an extensive surveillance camera system focused on the entry of the home.  Justice would have been well aware of the purpose of the camera when he entered the drug house.  Additionally Chastity Jefferson—an occupant of the house at the time of the police raid—submitted a statement to the police. Jefferson's statement to police was admitted and the district court concluded Officer Cespedes's testimony gave Jefferson's statement an indicia of reliability. This was not a case of mistaken identity—Jefferson's statement identified Justice based on a distinct article of clothing: orange shorts.

The record also reveals that the district court was made aware of the similarities this case shared with our unpublished decision in *United States v. Denson*, 224 F. App'x 417 (5th Cir. 2007).  Like the district court, I find it persuasive.  Here, Justice argues that despite *Denson*, the district court's reliance on Christiansen's police report—and its denial to him of the right to cross-examine an interest adverse to his—was in error.  Justice persists and directs this court to *McCormick*'s requirement that the district court make a finding of good cause in order to vindicate his procedural due process rights.  I do not agree with this incomplete reading of *McCormick*.  *McCormick* states, "[t]he failure to make such a finding on the record *can* constitute error that is not harmless." *McCormick*, 54 F.3d at 220 (emphasis added).  *McCormick* counsels that we need not remand to make explicit that which is implicit.  *Id.* at 221. Here, *McCormick* does not imply a violation of Justice's due process.

No. 10-10112

As this court has explained, a failure to make a good cause determination is harmless error where good cause exists, its basis found in the record, and its finding implicit in the court's ruling. *United States v. Grandlund*, 71 F.3d 507, 510 (5th Cir. 1995). A review of the revocation hearing supports the finding that the *Grandlund* framework was satisfied, and that the due process rights to which Justice was entitled were not violated as a consequence. Thus, the absence of an explicit good cause determination was harmless error as the finding was implicit in the district court's ruling.

In *United States v. Minnitt* we held that what is required for the revocation of supervised release "is enough evidence to satisfy the district judge that the conduct of the petitioner [did not meet] the conditions" of supervised release. 617 F.3d 327, 335–36 (5th Cir. 2010). In this case, the evidence adduced at the parole revocation hearing revealed that Justice was voluntarily present in a known crack house where large quantities of drugs were regularly sold; that he possessed a firearm; and, that he associated himself with persons engaged in criminal activities, among others, all in contravention of the terms of his supervised release. Put another way, this was not as close a case as Justice would have us believe. The police report and all of the evidence adduced at the revocation hearing consistently underscored the violations alleged against Justice. Indeed, there was no contrary evidence presented. After considering the totality of the evidence, the district court properly exercised its discretion in overruling Justice's objections. *Minnitt* supports affirmance and our conclusion that the district court did not violate Justice's procedural due process. Thus, in my opinion, no constitutional infirmity exists and remand is not necessary.

Because I view this case through the same prism as did the learned district court, I respectfully dissent.