# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60281

United States Court of Appeals
Fifth Circuit

**FILED**

June 8, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CLOIST JIMISON, JR.,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before STEWART, Chief Judge, and OWEN and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Defendants in supervised release revocation proceedings have a qualified right to confront witnesses. Unlike a defendant's Sixth Amendment right "to be confronted with the witnesses" testifying at trial, the confrontation right at revocation hearings that flows from the Due Process Clause can be overcome by a showing of "good cause." *United States v. Minnitt*, 617 F.3d 327, 332–33 (5th Cir. 2010). Cloist Jimison, Jr. argues that the district court violated even this more limited right to confrontation at his revocation hearing when it allowed a law enforcement officer to testify about an informant's statements and identification of the defendant. We agree and vacate the revocation order.

No. 15-60281

I.

Jimison was convicted of being a felon in possession of a firearm and served a 51-month term of imprisonment. Two years into his supervised release term that followed, the Government sought revocation based on a series of alleged violations of his release conditions. Jimison admitted to ten Grade C violations, mostly involving positive drug tests and failure to properly report to his probation officer, and denied three alleged Grade A violations. These more serious violations concerned illegal and counterfeit drug sales. They were based on three Mississippi state court indictments, but Jimison had not been tried or arrested on any of the charges.

The only evidence regarding the drug transactions presented at the revocation hearing was testimony from Special Agent Dodder of the Mississippi Bureau. Dodder testified that Jimison sold drugs to a confidential informant in three controlled buys. Dodder did not personally witness the drug deals, but said that he had seen a video recording, and had been involved with the investigation. He did not remember a number of facts about the drug buys, including whether Dodder was present when the informant set up the buys, where exactly they took place, or how far away he and other agents were during the deals. No audio or video recording was presented to the court nor made available to Jimison. Dodder also testified about showing the confidential informant a photo lineup from which he said the informant identified Jimison as the person who sold him drugs.

Jimison's attorney objected on confrontation grounds to Dodder's testimony about events he did not observe and the denial of an opportunity to cross examine the confidential informant. Without specifically ruling on the right to confrontation objection, the district court "note[d] the grand jury indictments, but particularly the audio and video evidence that ha[d] been testified about, and . . . conclude[d] that the government ha[d] met its burden

2

No. 15-60281

to prove these three violations by a preponderance of the evidence." The district court did not make a specific finding as to good cause to allow Agent Dodder's hearsay testimony.

The district court's finding that Jimison had committed Grade A violations triggered mandatory revocation of supervised release. U.S.S.G. § 7B1.3(a)(1) (2015).[1]  Following the Guideline applicable to Grade A violations, that court sentenced Jimison to 24 months in prison followed by another supervised release term of 12 months.

## II.

A claim that the district court violated a defendant's right to confrontation in a revocation proceeding is reviewed de novo, subject to harmless error analysis. *Minnitt*, 617 F.3d at 332.

In determining the scope of the right to confrontation at revocation hearings, we follow Supreme Court precedent addressing that right in the similar context of parole proceedings. *United States v. Grandlund*, 71 F.3d 507, 510 n.5 (5th Cir. 1995) ("The same due process rights granted to those facing revocation of parole are required for those facing revocation of supervised release."). The confrontation right in these nontrial proceedings that nonetheless may result in a deprivation of the defendant's liberty is governed by the Due Process Clause. *See Morrissey v. Brewer*, 408 U.S. 471, 481–82 (1972) (establishing due process rights of parolees in revocation hearings). As with other due process inquiries, a balancing approach is used to determine whether the right to confront witnesses at revocation proceedings is violated. *Id*. at 481 (noting that "due process is flexible and calls for such procedural protections as the particular situation demands"). Thus unlike the

---

[1] The Grade C violations to which Jimison admitted do not require revocation; a judge may decide to revoke, extend, or modify the supervised release conditions. U.S.S.G. § 7B1.3(a)(2).

3

Sixth Amendment's unconditional right to confront witnesses at trial, "the hearing officer [may] specifically find[] good cause for not allowing confrontation" at a revocation hearing. *Id.* at 489. Determining whether good cause exists requires "weigh[ing] the defendant's interest in confrontation of a particular witness against the Government's proffered reasons for pretermitting the confrontation." *Minnitt*, 617 F.3d at 333. We have held that a district court is required to make "an explicit, specific finding of good cause" for not allowing confrontation of a particular witness. *Grandlund*, 71 F.3d at 510 n.6; *see also Minnitt*, 617 F.3d at 333 (noting that a finding of good cause in the record is required).

With these principles in mind, we first consider whether the testimony at the revocation hearing implicated Jimison's right to confront witnesses testifying against him. Much of Dodder's testimony was offering out-of-court statements of the informant. Most significant is Dodder relaying that the confidential informant picked Jimison's picture out of a photo lineup. *See* FED. RULE EVID. 801(d)(1)(C) (excluding statements relating to pretrial identifications from the definition of hearsay only if the declarant testifies at trial); *see also, e.g., United States v. Owens*, 484 U.S. 554, 560 (1988) (noting that evidence of an out-of-court identification "would traditionally be categorized as hearsay"); CHRISTOPHER B. MUELLER AND LAIRD C. KIRKPATRICK, 4 FEDERAL EVIDENCE § 8:41 (4th ed. 2015) (explaining that a law enforcement officer who was present at a pretrial identification may testify about it but only if the identifier is also subject to cross examination) (citing cases including *United States v. Cueto*, 611 F.2d 1056, 1063 (5th Cir. 1980)). Other portions of Dodder's testimony—there was not a lot of it, as his direct testimony takes up less than five pages of transcript—appear to recount information from the informant about which Dodder lacked personal knowledge. For example, Dodder testified that before the controlled buys, the

informant "arranged to purchase methamphetamine from Mr. Jimison via telephone or text message." But Dodder acknowledged on cross examination that he did not recall if he was with the informant when he either texted or called Jimison to arrange the three buys. He further testified about money given to the informant before the buys and the amount of drugs the informant received in return after the meetings. Finally, for each of the three occasions at issue, Dodder testified to the bottom line: that the informant "met Mr. Jimison, and at that time Mr. Jimison sold him" drugs.

Even after defense counsel raised an objection based on confrontation rights, the Government did not cite any good cause for not calling the informant and the district court did not make any such finding. That failure to engage in the balancing test that sometimes permits hearsay testimony at revocation proceedings may seem like it should resolve this appeal. But "failure to articulate the reasons may be found to be harmless error where good cause exists, its basis is found in the record, and its finding is implicit in the court's rulings." *Minnitt*, 617 F.3d at 333 (internal quotation marks omitted). We therefore look to whether good cause exists by weighing the defendant's interest in confronting the particular witness against any interest the government had in preventing such an opportunity that is apparent from the record. *Id.*

Jimison had a strong interest in questioning the informant. Dodder's testimony was the only evidence offered in court to prove the Grade A violations. Three aspects of that testimony purportedly identified Jimison as the drug dealer: statements from the informant, the informant's out-of-court identification, and the video recording.[2] Only the final topic on that list does

---

[2] Any of Dodder's own contemporaneous observations that he recounted—and again, it's unclear if he was even present when the informant was being "wired up" to go out and do

not give rise to a confrontation right. Although a video recording ordinarily is at the top of the evidentiary food chain,[3] that was not the case here. The video itself was not introduced. And Dodder had not viewed the video in over a year. Not surprisingly, his recollection about what the video showed was hazy. When asked details like the location of the buys or whether the informant approach Jimison, Dodder responded that he did not remember. Most significantly, at no point in his testimony did Dodder state that he identified Jimison from the video. The crucial fact of Jimison's identify was thus based entirely on hearsay evidence, and almost surely had a significant effect on the court's ruling. And all this should be considered in the context of the heightened interest in confrontation that a defendant has when facing violations like the ones here that result in mandatory revocation. *See id.*

We next consider the Government's side of the due process inquiry. Though it did not specify any reason for not having the informant testify, the reluctance to call such witnesses is well known.[4] But without any details about a need to keep the identity of this particular informant confidential, we are unable to infer a strong interest on the Government's part. Assuming that Jimison was dealing to the informant as the Government contends, Jimison would likely already know the identity of the informant after entering into three transactions with him. And any testimony at the revocation hearing could be sealed to prevent further public disclosure. Indeed, we have

---

the buys—would establish only that the informant went out with money and came back with drugs. His personal observations would not establish the identity of the seller, which was the contested issue.

[3] *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007) (recognizing that although courts must view evidence in the light most favorable to the nonmoving party at summary judgment, when that party's version is clearly contradicted by videotape evidence, the court instead views the facts "in the light depicted by the videotape").

[4] Indeed a primary reason for making recordings—like the type Dodder testified were made in this case but not presented to the district court—is so the recording itself can be used to prevent the need to call the confidential informant.

previously indicated that hearsay testimony from a confidential informant should not be admitted at revocation hearings absent a "specific finding" that good caused excused the informant from testifying.  *United States v. McCormick*, 54 F.3d 214, 226 n.49.

We have also recognized that the government may prevail in the balancing inquiry when the hearsay testimony has strong indicia of reliability. *Id.* at 223 ("The reliability of the hearsay is an important consideration in determining whether sufficient good cause exists to forego confrontation."). This is the reason we have repeatedly found a district court's failure to make a good cause finding harmless when the hearsay evidence related to laboratory drug tests.  *See Minnitt*, 617 F.3d at 334–35; *McCormick*, 54 F.3d at 222–26; *Grandlund*, 71 F.3d at 510–11; *United States v. Kindred*, 918 F.2d 485, 487 (5th Cir.1990); *see also United States v. Justice*, 430 F. App'x 274, 277–78 (5th Cir. 2011) (discussing the significance of scientific evidence versus testimony in which credibility is more at issue).  In such cases, we have noted that the need to cross examine is less substantial because there are other ways to impeach scientific evidence, *McCormick*, 54 F.3d at 222–23, and as regular business records, lab reports bear a "substantial indicia of reliability," *id.* at 223.  Absent any reason to doubt the tests used in a defendant's case, we have rejected appeals challenging the hearsay recounting of lab results in revocation proceedings.  *See, e.g.*, *Kindred*, 918 F.2d at 487 (holding that there was no violation in Government's use of urinalysis test where defendant did not contest either the allegations of drug use or the accuracy of the test).  Indeed, Dodder also testified about lab results in Jimison's case, but Jimison does not cite those as the statements on which he wanted a right to confront the declarant.

Instead, he focuses on the testimony identifying him as the seller, which involves the "credibility choice" between the declarant and the supervisee for

which the interest in allowing confrontation is more significant. *See Justice*, 430 F. App'x at 278. We therefore have often found that good cause is lacking in cases in which the supervisee was denied the opportunity to examine eyewitnesses to the underlying allegations. *See id.* at 278–**7**9; *McBride v. Johnson*, 118 F.3d 432, 438–39 (5th Cir. 1997); *Farrish v. Miss. State Parole Bd.*, 836 F.2d 969, 978 (5th Cir. 1988). We have further noted that allowing such testimony through a police officer can be particularly damaging in light of an officer's perceived credibility. *Farrish*, 836 F.2d at 978. And, even in the world of eyewitness testimony where credibility is paramount, concern over the credibility of informants has given rise to a whole body of case law. *See, e.g., Illinois v. Gates*, 462 U.S. 213, 232–35 (discussing factors relevant to whether an informant's tips are credible). So have issues concerning the reliability of out-of-court identifications. *See, e.g., Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) ([R]eliability is the linchpin in determining the admissibility of identification testimony. . .”); *United States v. Moody*, 564 F.3d 754, 762-63 (5th Cir. 2009) (listing five factors courts consider in assessing the likelihood of misidentification). And Dodder did not give testimony about facts that might have alleviated concerns about the informant's reliability, including how many arrests the informant had helped secure, the benefits he received, and if he continued to be an informant after Jimison's case. On the scale of inherent reliability, the hearsay testimony in this case thus lies far away from lab reports.

In light of Jimison's substantial interest in confrontation, the lack of record evidence on the Government's interest in foregoing confrontation, and the lack of inherent reliability in the hearsay testimony, we cannot find implicit good cause in the record to allow the testimony. Of course, on remand the Government may be able to make a particularized showing why confrontation is not appropriate. Or it could introduce the video evidence,

No. 15-60281

which may be conclusive. But on the record before us, due process does not permit a revocation that is based on hearsay identification testimony from a confidential informant.

\* \* \* \*

We VACATE the revocation of supervised release and subsequent sentence, and REMAND for a new hearing.