## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30811

UNITED STATES OF AMERICA,

United States Court of Appeals
Fifth Circuit

**FILED**

August 2, 2017

Lyle W. Cayce
Clerk

Plaintiff - Appellee

v.

GINA M. SEAWRIGHT, also known as Kelly Heliferich, also known as
Amamda Hollingsworth, also known as Amanda Hollingsworth,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CR-121-1

Before DAVIS, JONES, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

The district court revoked Gina Seawright's supervised release and sentenced her to a period of 24 months imprisonment. On appeal, Seawright argues that she was denied her right to confront adverse witnesses during the revocation hearing. We find no confrontation error and AFFIRM the revocation of supervised release and sentence, but we REMAND for a correction of the revocation judgment.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-30811

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2012, Gina M. Seawright pled guilty in the United States District Court for the Eastern District of Louisiana to making, uttering, and possessing counterfeit securities in violation of 18 U.S.C. § 513. She received a 27-month sentence, and began a three-year term of supervised release in June 2014.

On March 17, 2016, the Government filed a Rule to Revoke Supervised Release, alleging Seawright violated the terms of her supervised release by: "1) failing to report to the Probation Office for an appointment on January 26, 2016; 2) failing to notify her Probation Officer within 72 hours of any change in her residence or employment (her whereabouts were unknown); 3) failing to notify her Probation Officer within 72 hours of her being questioned by a law enforcement officer; 4) failing to participate in drug/alcohol treatment as instructed by her Probation Officer; and 5) failing to pay restitution as ordered by the Court . . . ."

Several weeks later, Seawright's probation officer submitted a dispositional report to the district court which contained a detailed description of Seawright's alleged violations. The report stated that, in December 2015 Seawright visited the Hammond Addictive Disorders Clinic as instructed for a substance-abuse evaluation, but she declined to provide a urine sample for drug testing and left the clinic before completing the evaluation. She was asked to return to provide a sample by the end of the day, but she did not do so. Seawright was then recommended for intensive outpatient treatment.

Seawright's probation officer instructed her to contact the clinic and begin treatment. The day after Seawright was to begin treatment, her probation officer was unable to contact her to determine if she had attended as instructed. A few days later, the officer left a voice message on Seawright's cell phone, but Seawright did not return the call. The next time the officer tried to reach Seawright, he learned that her "cell phone number was disconnected."

No. 16-30811

Eventually, the probation officer learned from the clinic that Seawright never contacted the clinic and missed all of her scheduled appointments.

Seawright's probation officer continued his effort to contact her. The officer visited Seawright's residence, but Seawright's mother told the officer that her daughter had not stayed at the house for a few weeks. The officer asked her to tell Seawright to report to the probation office on a specific date and time. The officer later confirmed that the message was given to Seawright. Nevertheless, she did not report as instructed and later attempts to contact her also failed.

In addition, the dispositional report noted that as of June 7, 2016, Seawright had not made a restitution payment since February 2015. She had a remaining restitution balance of over $59,000.

Finally, the report noted that "[i]n connection with the above violations," a Hammond Police Department detective had told Seawright's probation officer of outstanding state felony arrest warrants against her in Tangipahoa Parish. The warrants were issued for felony theft, monetary instrument abuse, and theft of a motor vehicle. The warrants contained statements by other officers about the criminal investigations, including summaries of witness interviews. The report advised that, "[a]s Seawright has been in federal custody since her arrest for supervised release violations, the . . . warrants remain outstanding."

Most of the violations alleged in the report constituted Grade C violations under the Guidelines. *See* U.S.S.G. § 7B1.1(a). According to the report, though, the warrants resulted in a Grade B violation because of Seawright's failure to avoid committing other federal, state, or local crimes. *See id.* The probation officer recommended sentencing based on the Grade B violation. *See id.* § 7B1.1(b). With Seawright's criminal history category of IV, the officer recommended 12 to 18 months imprisonment.

No. 16-30811

The Government had not alleged criminal-conduct violations in its petition for a warrant to arrest Seawright or in its original Rule to Revoke. A few days after the probation officer submitted the dispositional report, the Government filed an Amended Rule to Revoke Supervised Release that included an allegation that Seawright had engaged in criminal conduct while on supervised release.

On June 29, 2016, the district court held a revocation hearing. Seawright immediately stipulated to the Grade C violations but objected to "any revocation based on the Grade B violation based on the pending charges." Seawright's counsel explained: "I don't believe those are properly before the Court as no evidence has been put in. I think the arrest warrants are not sufficient to meet the burden of preponderance of the evidence. Ms. Seawright has confrontational rights[.]"

The district court did not directly address Seawright's objection. It did state the court was "here now if anybody wants to produce any evidence." No evidence was offered. The district court then recited its understanding of the record. It stated Seawright "refused to provide a urine sample" at the Hammond Addictive Disorders Clinic and "never showed up for treatment." She failed to contact her probation officer, and her probation officer was unable to get in touch with her. A detective "informed her probation officer about outstanding warrants in Tangipahoa Parish[.]" She had an outstanding restitution balance of over $59,000, with the last payment being made in February 2015. Asked if they "wish[ed] to correct anything that [the court understood was] the state of the record," both parties said they did not. The court found Seawright had "clearly and patently violated the conditions of her supervised release, and her supervised release is revoked."

The court then proceeded to sentencing. Seawright's probation officer testified. The officer described Seawright's failure to complete the substance-

4

No. 16-30811

abuse evaluation at the Hammond Addictive Disorders Clinic and her failure to attend treatment sessions. When asked about the warrants, the officer first reiterated Seawright's failure to complete the substance-abuse evaluation and then explained, "with the new arrest and stuff . . . any kind of police contact, she is supposed to notify us of that, and of course I wind up finding out through a detective."

The district court asked Seawright about the warrants, and Seawright's counsel again asked the court not to "find any Grade B violations because there's been no testimony put on by the investigating detective or the complaints in this case, and it would be a violation of Ms. Seawright's due process rights to find a Grade B violation." The court responded, "Well, it's not a violation of her due process rights to sentence her for violating the terms of her supervised release." The Government interjected and noted that "[r]evocation is mandatory for refusal to comply with drug testing under . . . 18 U.S.C. § 3583(g)(3)," to which the court responded, "I don't disagree."

Seawright's counsel also objected to the Guidelines range, arguing the range should be 6 to 12 months for a Grade C violation rather than 12 to 18 months for a Grade B violation. Counsel did not file a memorandum to that effect because she "left open the opportunity" that a Grade B violation would be before the court if the Government called the witnesses to the criminal conduct. The Government did not do so. The court heard counsel's argument regarding the Guidelines range, asked counsel if she "disagree[d] that the statutory maximum is 24 months," and imposed a sentence of 24 months. Seawright timely appealed.

## DISCUSSION

We review a district court's decision to revoke supervised release for an abuse of discretion. *United States v. McCormick*, 54 F.3d 214, 219 (5th Cir.

5

1995). On the other hand, any "claim that the district court violated a defendant's right to confrontation in a revocation proceeding is reviewed *de novo*, subject to harmless error analysis." *United States v. Jimison*, 825 F.3d 260, 262 (5th Cir. 2016).

Defendants are entitled to more limited rights in revocation hearings than in criminal prosecutions. *United States v. Minnitt*, 617 F.3d 327, 332 (5th Cir. 2010). For instance, the Federal Rules of Evidence do not apply in revocation hearings. FED. R. EVID. 1101(d)(3). The hearing should be "flexible enough" to consider some evidence that would not be admissible in a criminal trial. *See Morrissey v. Brewer*, 408 U.S. 471, 489 (1972).

There are, though, "minimum requirements of due process" applicable to revocation proceedings. *See id.* In *Morrissey*, the Supreme Court recognized that the defendant's rights in the parole-revocation context include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) *the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)*; (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* (emphasis added). We have recognized that "'[t]he same protections granted those facing revocation of parole are required for those facing the revocation of supervised release.'" *McCormick*, 54 F.3d at 221 (quoting *United States v. Copeland*, 20 F.3d 412, 414 (11th Cir. 1994)).

Seawright's argument focuses on her right to confront adverse witnesses. This "qualified right" to confrontation during a revocation hearing is part of a defendant's "fair and meaningful opportunity to refute and challenge adverse evidence to assure that the court's relevant findings are based on verified

facts." *United States v. Grandlund*, 71 F.3d 507, 510 (5th Cir. 1995). "Unlike a defendant's Sixth Amendment right 'to be confronted with the witnesses' testifying at trial, the confrontation right at revocation hearings that flows from the Due Process Clause can be overcome by a showing of 'good cause.'" *Jimison*, 825 F.3d at 261–62 (quoting *Minnitt*, 617 F.3d at 332–33). The confrontation right is pertinent to the district court's decision to revoke supervised release, but the right "does not apply in connection with the length of any resulting prison sentence." *See United States v. Williams*, 847 F.3d 251, 254 (5th Cir. 2017), *pet. for cert. filed* (U.S. June 27, 2017) (No. 17-5015).

Initially, we conclude that the district court did not abuse is discretion in revoking Seawright's supervised release. *See McCormick*, 54 F.3d at 219. "All that is required for the revocation of supervised release 'is enough evidence to satisfy the district judge that the conduct of the petitioner has not met the conditions' of supervised release." *Minnitt*, 617 F.3d at 335–36 (quoting *McCormick*, 54 F.3d at 219 n.3). That standard is clearly met here where Seawright stipulated to a long and detailed series of supervised-release violations. *See McCormick*, 54 F.3d at 219.

Seawright, though, claims reversible error for what allegedly was the court's "admitting and relying on otherwise inadmissible hearsay evidence without conducting [the] required balancing test, and without making the necessary finding of good cause." She argues the district court erred in admitting and relying on the warrants to find that Seawright committed a federal, state, or local crime while on supervised release.

Seawright relies on several of our precedents, all dealing with situations where a court admitted evidence despite a confrontation-based objection and relied on that evidence to find the defendant violated a condition of supervised release. In one example, the hearing officer found good cause to overrule the defendant's right to confrontation because the testifying victim was a "fearful

No. 16-30811

witness." *Barnes v. Johnson*, 184 F.3d 451, 453 (5th Cir. 1999). That witness provided the only testimony in support of the sexual-assault allegation against the defendant, and the officer relied on that evidence to find the defendant had in fact sexually assaulted the victim. *Id.* at 453–55. In another case, the Government offered evidence in support of drug-related allegations against the defendant. *McCormick*, 54 F.3d at 217–18. The district court overruled the defendant's several confrontation-based objections to the evidence and relied on that evidence to find the defendant committed the drug-related violations. *Id.* at 218. Seawright also relies heavily on a non-precedential case. *See United States v. Justice*, 430 F. App'x 274 (5th Cir. 2011). There, the Government offered hearsay evidence in support of allegations against the defendant; the district court overruled the defendant's confrontation-based objections; and the court relied on the evidence to conclude the defendant committed the alleged violations. *Id.* at 276–77.

In this case, it is not at all clear that the district court admitted and relied on hearsay evidence, denied Seawright's confrontation rights, and found that Seawright committed another federal, state, or local crime as the basis for revoking Seawright's supervised release. In fact, a review of the record suggests just the opposite.

Although Seawright did not object to the introduction of the warrants at her detention hearing, counsel mentioned several times at her revocation hearing that the warrants were not properly before the court, were not supported by any evidence, and violated her confrontation rights. Rather than directly addressing her objections, the district court swept them aside as irrelevant. For instance, at the start of the revocation hearing, Seawright's counsel objected to any revocation "based on the pending charges" in the warrants, noting they were not "properly before the Court as no evidence has been put in." The court said "I'm here now if anybody wants to produce any

evidence," but no evidence was produced. The court then summarized its understanding of the record, which included the fact that "a detective with the Hammond Police Department informed [Seawright's] probation officer about outstanding warrants in Tangipahoa Parish for the following: felony theft, monetary instrument abuse, and theft of a motor vehicle." The court asked if either party "wish[ed] to correct anything that [the court understood was] the state of the record," found Seawright "clearly and patently violated the conditions of her supervised release" based on that undisputed state of the record, and revoked supervised release.

The second time Seawright's counsel objected, she asked the court not to "find any Grade B violations because there's been no testimony put on . . . , and it would be a violation of Ms. Seawright's due process rights to find a Grade B violation." The court responded, "Well, it's not a violation of her due process rights to sentence her for violating the terms of her supervised release." The third time Seawright's counsel objected, she argued the Guidelines range should be 6 to 12 months for a Grade C violation, not 12 to 18 months for a Grade B violation. The court indicated it understood the argument and responded, "Do you disagree that the statutory maximum is 24 months?" Counsel responded, "No," and the court sentenced Seawright to 24 months.[1]

In addition to the objections, it is also telling that Seawright's counsel failed to file a memorandum regarding the objection to the Guidelines range — a point noted by the district court — because she "left open the opportunity that if the government were to call [the hearsay declarants] in these underlying [charges], then a Grade B violation would be before the Court . . . ." Despite the court's several invitations to the parties to offer evidence, no such evidence

---

[1] After the court imposed sentence, Seawright's counsel objected to the unreasonableness of the sentence but did not argue or object that revocation was based on any Grade B violation. Seawright does not argue unreasonableness on appeal.

was offered.  Seawright's counsel explained to the court, "because no evidence was put on about these Grade B violations, we are at a Grade C violation, which would be 6 to 12 months."  The court heard the argument, thanked counsel for her explanation, and sentenced Seawright to the statutory maximum.

At no point in this short revocation hearing did the parties discuss Seawright's actual commission of the crimes underlying the warrants. Discussion of the warrants was limited to the fact of their existence — a point not disputed by Seawright.  When her probation officer testified, he focused on Seawright's failure to complete her substance-abuse evaluation and attend drug treatment.  When asked about the warrants, he responded that "with the new arrest and stuff . . . any kind of police contact, she is supposed to notify us of that, and of course I wind up finding out through a detective."  The hearing focused on Seawright's series of supervised-release violations and there is no basis, as Seawright contends, to conclude that the warrants "drove" the district court's decision.  These facts are quite different from a case Seawright cites, where proof of the accused's identity "was . . . based entirely on hearsay evidence, and almost surely had a significant effect on the court's ruling." *Jimison*, 825 F.3d at 264.  The district court, which was familiar with this defendant and her repeated failure to abide by the terms of her supervised release, lawfully exercised its discretion to revoke supervised release and impose sentence.

Moreover, we note that any error would be harmless.  In one precedent, the alleged supervised-release violations included failure to report, failure to participate in drug and alcohol treatment, failure to pay restitution, and failure not to commit a state crime.  *United States v. English,* 400 F.3d 273, 274 (5th Cir. 2005).  Although most of the violations occurred during supervised release, the state-law violations occurred a few days after supervised release expired.  *Id.*  On appeal, we held that any reliance by the

district court on the state-law violations was harmless because the district court noted that the other supervised-release violations were sufficient to support revocation. *Id.* at 275–76. "'Where there is an adequate basis for the district court's discretionary action of revoking probation, the reviewing court need not decide a claim of error as to other grounds that had been advanced as a cause of revocation.'" *Id.* at 276 (quoting *McCormick*, 54 F.3d at 219 n.3). In our case, too, it is clear from the revocation hearing that the district court considered Seawright's Grade C violations — to which Seawright stipulated — as sufficient to support revocation and imposition of sentence.

Our analysis to this point has focused on the revocation hearing itself. There was, though, an error in the judgment. That document repeated all the Government's allegations in the Rule to Revoke, including committing another federal, state, or local crime; it stated Seawright "admitted guilt" to all of the violations. As the Government noted at oral argument, Seawright did not "admit[] guilt" to committing another federal, state, or local crime — that finding is clearly belied by the hearing transcript. Indeed, the district court noted that Seawright's "case hasn't been brought up yet in Tangipahoa Parish," and advised her not to say anything that would be incriminating. Just as it is clear from the hearing that Seawright stipulated to the Grade C violations, it is also clear that Seawright did not stipulate, *i.e.*, "admit[] guilt," to committing a federal, state, or local crime. "Where there is a conflict between the oral pronouncement and the written judgment, the oral pronouncement controls." *Id.* A limited remand is appropriate to correct the revocation judgment.

We REMAND to the district court for correction of the error, and AFFIRM in all other respects.