## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-50432

United States Court of Appeals
Fifth Circuit

**FILED**
February 28, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

LEDARVIS JOINER,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:12-CR-34-2

Before BARKSDALE, HIGGINSON, and DUNCAN, Circuit Judges.

PER CURIAM:*

Primarily at issue is whether the district court's failure to make the requisite good-cause finding for preventing Ledarvis Joiner from confronting adverse witnesses at his supervised-release revocation hearing was harmless error. VACATED and REMANDED FOR EXPEDITED PROCEEDINGS.

I.

Joiner, in March 2012, pleaded guilty to aiding and abetting the distribution of a quantity of a mixture and substance containing a detectable

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

amount of cocaine base, "crack", within 1,000 feet of a school, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 860. That June, he was sentenced to 12 months and one day of imprisonment, to be followed by six years of supervised release.

Joiner's term of supervised release was revoked in June 2013 because of his "association with persons engaged in criminal activity, and for use of marijuana". He was sentenced to nine months' imprisonment, to be followed by six years of supervised release. This next term of supervised release was also revoked, in March 2017, for his "failure to report, association with his co-defendant, and failure to comply with sex offender registration". He was again sentenced to nine months' imprisonment, to be followed by six years of supervised release. The revocation proceeding at issue here arose during this most recent period of supervised release.

The revocation warrant alleged that Joiner violated the terms of his supervised release by failing to comply with the condition that he "shall reside in a community corrections facility such as Dismas Charities . . . for up to 120 days after release from the Federal Bureau of Prisons". The warrant recounted that, after Joiner was placed at Dismas Charities Halfway House (Dismas) in March 2019, he received a one-page incident report from Dismas for failing to provide a urine sample, being unaccountable for three hours and 48 minutes, and possessing an unauthorized cellular telephone. Joiner's placement at Dismas was allegedly terminated, based on these actions, for his failure to comply with program requirements.

A revocation hearing was held on 18 April, at which Joiner was represented by appointed counsel. Joiner pleaded "[n]ot true" to the allegation he violated his supervised release. Joiner's probation officer, Senior U.S. Probation Officer Peel, was the only witness called at the hearing. Officer Peel testified about the incident report, which he received from Dismas' director,

No. 19-50432

and admitted he neither had personal knowledge of Joiner's alleged violations at Dismas nor conducted an independent investigation regarding the report's allegations.  Specifically, he lacked information on how a Dismas resident obtains a pass to leave the halfway house (which may explain Joiner's absence of three hours and 48 minutes), and he was equally unable to address questions about Joiner's alleged cellular-telephone possession.

The Government offered the Dismas report into evidence as Government's Exhibit 1.  Joiner objected to the report's admission, contending "[i]t's hearsay and a right to confront the witnesses".  The court overruled Joiner's objection and admitted the report.  During closing arguments, Joiner reiterated his objection to the report's admission by asserting it was unreliable, lacked details, and that "we certainly object to that without the presence of [Dismas' director], or whoever it is that has the knowledge of this" report.  The Government conceded the report was hearsay but contended it had indicia of reliability upon which the court could rely "in making a determination whether there is reasonable grounds to believe that the terms of [Joiner's] supervised release were violated".

The district court, "having heard U.S. Probation Officer Peel's testimony and arguments of counsel, having considered the petition [for warrant] itself along with the -- not only the allegation but the basis for that allegation and Government's Exhibit No. 1" (the incident report), revoked Joiner's supervised release and sentenced him to 18 months in prison with no additional term of supervised release.

## II.

Joiner contends his due-process confrontation rights were violated when he was convicted on the basis of hearsay evidence without an opportunity to confront adverse witnesses.  "A claim that the district court violated a defendant's right to confrontation in a revocation proceeding is reviewed *de*

3

No. 19-50432

*novo*, subject to harmless[-]error analysis." *United States v. Jimison*, 825 F.3d 260, 262 (5th Cir. 2016) (italics added and citation omitted). In that regard, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt". *Chapman v. California*, 386 U.S. 18, 24 (1967).

But, of course, for issues not preserved in district court, review is only for plain error. *See, e.g., United States v. Broussard*, 669 F.3d 537, 546 (5th Cir. 2012) (citation omitted). "To preserve error, an objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009) (citation omitted).

The Government contends: Joiner failed to preserve his objection in district court adequately; and our review, therefore, is only for plain error. We conclude otherwise: although Joiner's objection could have been stronger (by, for example, referencing the need for a good-cause finding), he did object on hearsay and confrontation grounds. Consequently, our review is *de novo*, subject to harmless-error analysis. *See Jimison*, 825 F.3d at 262 (citation omitted).

"Revocation hearings are not part of the criminal prosecution, are not formal trials, and the rules of evidence are not applied mandatorily." *United States v. Grandlund*, 71 F.3d 507, 509 (5th Cir. 1995) (citations omitted). But, "[b]ecause a person's liberty is at stake, . . . due process requires that a defendant be given a fair and meaningful opportunity to refute and challenge adverse evidence to assure that the court's relevant findings are based on verified facts". *Id.* at 509–10 (citations omitted).

In that regard, a defendant at a revocation hearing has "a qualified right to confront and cross-examine adverse witnesses". *Id.* at 510. The right is "qualified" because "[t]he confrontation of a particular witness may be

4

disallowed upon a finding of good cause". *Id.* (citation omitted). Consequently, if a court finds good cause, it may revoke supervised release based on hearsay evidence without live testimony from a witness with personal knowledge, *see United States v. Williams*, 847 F.3d 251, 253–54 (5th Cir. 2017), if it "finds by a preponderance of the evidence that the defendant violated a condition of [his] release", *see* 18 U.S.C. § 3583(e)(3). The Government bears the burden of providing such evidence. *See, e.g.*, *United States v. Montez*, 952 F.2d 854, 859 (5th Cir. 1992).

A good-cause finding must be "explicit" and "specific", "and the reasons should be made a part of the record of the revocation hearing". *Grandlund*, 71 F.3d at 510 n.6 (citation omitted). Although a court's "failing to make a specific finding of good cause to abrogate [the] right of confrontation . . . may require reversal in most instances, [such a failure] may be found to be harmless error where good cause exists, its basis is found in the record, and its finding is implicit in the court's rulings". *Id.* at 510 (citations omitted).

"In [determining] whether good cause exists, courts must employ a balancing test which weighs the defendant's interest in the confrontation of a particular witness against the government's interest in the matter". *Id.* When doing so, "[a] critical consideration is the indicia of reliability of the challenged evidence". *Id.* (citations omitted). "[T]he government may prevail in the balancing inquiry when the hearsay testimony has strong indicia of reliability". *Jimison*, 825 F.3d at 265 (citation omitted).

The district court did not make an explicit good-cause finding. Therefore, we must determine whether this failure was harmless error. We conclude it was not.

The Government contends that at issue during the revocation hearing was *whether* Joiner violated the relevant condition of his supervised release by failing to reside at a community corrections facility, not *why* he was discharged

from Dismas. Consequently, according to the Government, the revocation hearing was not the proper forum for Joiner's challenges regarding Dismas, its staff, or his alleged violations at the halfway house.

Even assuming *arguendo* the Government was not required to show anything other than whether Joiner was, in fact, discharged from Dismas, it never adequately established this fact at the revocation hearing. Officer Peel never testified to having personal knowledge of Joiner's discharge; instead, he was repeatedly questioned about, and he referenced, the report and its contents. Further, the report does not establish Joiner was discharged from Dismas, yet the Government offered it into evidence and the district court relied on it in revoking Joiner's supervised release.

Notably, it appears the court concluded live testimony from Dismas was unnecessary because the report, having been provided by Dismas—an entity with which the probation office had done business before—was reliable. But the Government cites no precedent supporting its contention that Dismas' prior relationship with the courts renders the statements of their staff so reliable that they need not be cross-examined.

Indeed, it is not at all clear that Officer Peel even knew who at Dismas prepared the report (the director signed it, but it was not clear that she wrote it based on her personal knowledge). Certainly, for example, the report's allegations are not the same as scientifically verifiable information in a laboratory report, like that in *United States v. Minnitt*, 617 F.3d 327, 333–34 (5th Cir. 2010), where our court held a defendant's interest in cross-examination was minimal because the laboratory report at issue contained "scientifically-verifiable facts".

In fact, cross-examination revealed a number of questions where Officer Peel did not know the answer and deferred to the report (which did not clearly answer some of the questions asked). Our court has noted that "a releasee's

interest in cross-examining a laboratory technician regarding a scientific fact is less than would be his interest, for example, *in confronting a hearsay declarant regarding what that declarant may have seen*". *United States v. McCormick*, 54 F.3d 214, 222 (5th Cir. 1995) (emphasis added). This is because "[t]he truth of the former can be verified through methods of science; the truth of the latter can best be verified through the rigor of cross-examination, conducted under the circumspect eye of the district court". *Id.* The report alone is therefore not enough to overcome Joiner's due-process confrontation right.

The Government also relies upon its alleged "interest in avoiding the expense, difficulty, and delay in securing Dismas Charities staff members to testify to facts that were minimally probative of the revocation allegations". The facts are not "minimally probative", however, as they are the only facts that were presented at the hearing to revoke Joiner's supervised release. Further, the Government does not articulate any specific expense, difficulty, or delay in requiring Dismas staff to testify, and the ordinary burdens of testifying in court are not an excuse for the failure to do so. Consequently, we find no good cause, on this record, for the court's disallowing Joiner's confrontation of adverse witnesses; the court's failure to make an explicit good-cause finding was therefore not harmless error.

## III.

For the foregoing reasons, Joiner's sentence is VACATED and this action is REMANDED to district court for a new revocation hearing. Joiner's release date is approaching. We, therefore, direct the district court to EXPEDITE further proceedings to resolve this matter well before Joiner's release date from imprisonment.